49

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 0 5 2004

Michael N. Milby
Clerk of Court

ESTATE OF JOSE VARGAS, by and            *
through MARIA H. COVARRUBIAS, *etc.*       *
Plaintiffs,                              *
                                         *
v.                                       *        CIVIL ACTION No. B-02-132
                                         *
GEORGE F. FELTON, III.,                  *
DANIEL ZAEHRINGER, PATRICK B.            *
McDERMOTT, ETC.                          *
                                         *
Defendants.                              *

## DEFENDANT PATRICK B. McDERMOTT'S
## BRIEF IN SUPPORT OF HIS MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)
## OF THE FRCP AND ALTERNATIVE MOTION FOR SUMMARY JUDGEMENT

*TO THE HONORABLE JUDGE OF SAID COURT:*

Defendant, Patrick B. McDermott (McDermott), who has been sued in his
individual capacity, moves to dismiss the allegations against him pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure. Alternatively, McDermott moves for
summary judgement on the basis that under the doctrine of qualified immunity, he is
immune from suit.

In support of this motion, McDermott submits this brief.[1]

1.     **Factual Background**

On July 1, 2000[2], McDermott, who had been working with the United States
Border Patrol since 1998, was on duty in his official capacity as Border Patrol Agent
with the United States Border Patrol. *See Defendants' Exhibit 2.* On that day,
McDermott was working with Border Patrol Agent Dan Zaehringer (another defendant in
this case) patrolling the area along the Rio Grande River and its levees for illegal

_____

[1]Referenced exhibits are included within a separately filed exhibit packet entitled "Defendants'
Summary Judgement Motions' Exhibit Packet" which is incorporated by reference herein.

[2]At paragraph 9, the Plaintiff's Amended Complaint states that the drownings of Jose Guadalupe
Vargas and Guillermo Acosta Zamora took place on June 30, 2000 at or near Brownsville, Texas. While it
is true that a drowning occurred at or near Brownsville, Texas, on June 30, 2000, the drownings of Mssrs.
Vargas and Acosta-Zamora occurred on July 1, 2000, at the Anacua Wildlife Refuge near Santa Maria,
Texas—some 20 miles northwest of Brownsville. See Defendant's Exhibits 1 through 4.

immigrant/alien activities. *Defendants' Exhibits 2 and 3.*

At about 3:30 p.m., Agents Zaehringer and McDermott learned by radio dispatch that there was seismic sensor activity at an area of the Rio Grande River located in the Anacua Wildlife Refuge. *Id.* This particular sensor was located near a "landing" area that at that time was frequently used by illegal aliens (as well as narcotics traffickers) crossing the river into the United States. *Id.* Since that location was within their assigned area for patrol, Agents Zaehringer and McDermott responded to the sensor. *Id.*

Agents Zaehringer and McDermott drove up Cobarubias Road (aka Anacua Road) to where the road met the river levee service road. *Id.* When they arrived, Border Patrol Agent George "Trip" Felton (also a defendant in this case) was already there scanning the levee for alien traffic using a pair of binoculars. *Defendant's Exhibits 2, 3, and 4.* Agent Felton, who was working alone that day, also heard the dispatch on the sensor and came to assist. *Id.*

Between the levee service road and the river itself the terrain slopes downward toward the river. This area is very rugged and densely overgrown with all kinds of vegetation native to deep South Texas area. *Id.* From this vantage point, it was impossible for Agents McDermott, Zaehringer or Felton to see the river, much less anyone that might be crossing it. *Id.* The agents waited a few minutes to see if any illegal aliens would try to sneak out of the dense shrubs to cross the abutting levee service road. *Id.*

Seeing no activity, the agents decided to split up to investigate what set off the sensor. *Id.* It was decided that Agents Zaehringer and Felton would walk directly to the landing area near where the sensor was located; once there, they planned to walk north up a trail from the landing area. *Id.* At the same time, McDermott would enter one of the trails leading southward to the landing from the levee road. *Id.* Since this area was also well known for its illegal drug activity, McDermott brought with him a government issued Remington 870 -12 Gauge shotgun. *Defendant's Exhibit 2.*

The distance from the levee road to the landing area was about half a mile. *Id.* When McDermott was about half way to the landing, he heard Agent Felton on the radio saying that he saw aliens moving down river. *Id.* McDermott started to quicken his pace down the trail. As he got closer to Agents Zaehringer's and Felton's position,

-2-

McDermott heard Agents' Felton and Zaehringer instructing the aliens to stop and sit down. *Id.* McDermott still could not see anyone at this point; however, he thought it sounded as if the situation was under control so he slowed his pace. *Id.*

However, as McDermott got closer to Agents Zaehringer and Felton's position, he heard frantic shouting from both sides of the river. *Id.* As McDermott reached the landing, he saw several water jugs floating in the river and a man climbing up the riverbank on the Mexican side of the river. *Id.* Agent Felton told McDermott that two men had jumped into the river and had both gone under and not resurfaced. *Defendants' Exhibits 2 and 4.* Felton told McDermott that he tried to reach McDermott on his radio so he could call for rescue and/or medical assistance. *Id.* Unfortunately, radio communications in this area are frequently hindered due to the dense vegetation and terrain present in the Anacua Wildlife Refuge and McDermott did not hear his call. *Id.*

McDermott, along with Agents Zaehringer and Felton, scanned the river looking for the men. *Id.* McDermott took off his gun belt, bullet proof vest, and handed his shotgun to Agent Felton in preparation of jumping in to attempt a rescue, but neither one of the men re-surfaced. *Id.* McDermott unsuccessfully tried to call the Harlingen Border Patrol Station for assistance using his cell phone. *Id.* After several attempts on the hand held radio, McDermott was able to get a message out for EMS. *Id.* McDermott also requested a helicopter but was advised that none were in the area. *Id.* Some of the individuals that had been detained by Agents' Felton and Zaehringer were sitting on the ground nearby. *Id.* On a couple of occasions, one or two persons would start to get up in what appeared to be an attempt to search for the victims. *Id.* When this happened, the agents instructed them to sit back down for their own safety and to hopefully prevent yet another drowning from occurring. *Id.* After about an hour, the agents decided that there was nothing more that could be done. *Id.*

The agents then transferred the aliens, some of whom McDermott recognized as having been apprehended and voluntarily returned to Mexico–without incident-- just the night before, back to the Harlingen Station for processing. *Id.*

At no time during this incident did McDermott ever draw, level, or aim his side arm or shotgun. *Defendants' Exhibits 1, 2, 3, and 4.* In addition, at no time did McDermott observe Agent Felton or Agent Zaehringer draw or aim their firearms–or any

other weapon--at any of the individuals present that day.  *Defendants' Exhibit 2.*

## 2.    Defendants' Exhibits' Summary

In filing their respective motions to dismiss the allegations against them, the Defendants have submitted an Exhibit Packet for this Court to consider in reviewing the arguments set forth herein.  This packet consists of Declarations executed by each of the named defendants pursuant to 28 U.S.C. § 1746 (Defendant's Exhibits 2 - 4) as well as a copy of Requests for Admissions (Defendant's Exhibit 1) that were forwarded to Plaintiffs in June of 2003.  Attached to Defendant's Exhibit 1 is a copy of the "green card" receipt indicating that Plaintiffs' counsel received these Requests for Admission on July 1, 2003.  To date, Plaintiffs have not responded to the Requests for Admissions or otherwise sought an extension of time.  As such, the Requests for Admissions should be deemed admitted.

### Admissions Deemed Admitted Under Rule 36 of the FRCP

Rule 36(a) of the Federal Rules of Civil Procedures states, in relevant part:

> *...The matter is admitted unless, within 30 days after service of the request, or within such shorter time or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney....*

There has been no written stipulation or agreement between counsel regarding the lengthening of the time period for which to respond to any discovery in this case. There is no Court order in place allowing the Plaintiffs an additional three months to respond to the Defendants' discovery.  Therefore, the admissions should be deemed admitted.

Therefore, the following points of fact have been established by way of Plaintiffs' admissions:

1. The incident at issue in this lawsuit occurred on July 1, 2000;
2. The incident at issue in this lawsuit occurred at the Anacua Wildlife Refuge located near the town of Santa Maria, Texas;
3. Jose Vargas died on July 1, 2000;
4. Guillermo Acosta Zamora died on July 1, 2000;
5. Jose Vargas had not been detained by United States Border Patrol agents at any time on July 1, 2000;
6. Guillermo Acosta Zamora had not been detained by United States Border Patrol Agents at any time on July 1, 2000;
7. None of the Border Patrol Agents present immediately before, during, or after the incident involving Jose Vargas drew their weapons on Jose

-4-

Vargas;

8.    None of the Border Patrol Agents present immediately before, during, or after the incident involving Jose Vargas drew their weapons on Guillermo Acosta Zamora;

9.    None of the Border Patrol Agents present immediately before, during, or after the incident involving Jose Vargas drew their weapons on any of the persons detained at the scene of the drownings of Jose Vargas and Guillermo Acosta Zamora;

10.    The United States, nor any of its employees or agents, did anything to prevent the possible rescue of Jose Vargas; and,

11.    The United States, nor any of its employees or agents, did anything to prevent  the possible rescue of Guillermo Acosta Zamora.

*See Defendant's Exhibit 1.*

For purposes of this lawsuit, Plaintiffs' failure to respond to these admissions has "conclusively established" the matters stated, and cannot, without a Court order be withdrawn or otherwise amended.  See Rule 36(b) of the FRCP; see also, *In Re Carney*, 258 F.3d 415 (5th Cir. 2001).

## 3.    Statement of the Issues

1.    Whether the constitutional claims against Patrick B. McDermott should be dismissed for failure to state a claim upon which relief can be granted when the evidence indicates that not only are the Plaintiffs allegations based on pure conjecture, but also that Patrick B. McDermott was not even present during the events leading up to and including the drownings of the decedents.

2.    Whether Patrick B. McDermott is entitled to qualified immunity since the evidence shows that there was no violation of the decedents' Fourth, Fifth and Fourteenth Amendment rights.

## 4.    Summary of Argument

The allegations made against Patrick B. McDermott should be dismissed for failure to state a claim.  All the allegations against Patrick B. McDermott are based on pure conjecture and speculation.  As such, they should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Alternatively, summary judgement should be rendered in favor of Patrick B. McDermott and against the Plaintiffs herein on the basis that Patrick B. McDermott is entitled to qualified immunity.  In evaluating a case to see if a defendant is entitled to

qualified immunity, the court must undertake a two step analysis. The court must determine "whether the 'plaintiffs allegations, if true, establish a constitutional violation.'" *Williams v. Kaufman County*, 352 F.3d 994, 1002 (5th Cir. 2003), quoting *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct 2508, 153 L.Ed.2d 666(2002). If they do, then the court must determine "whether  the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Id*. quoting *Hope*, 536 U.S. at 739 (2002). Plaintiffs have failed to establish a constitutional violation in this case and, as such, Patrick B. McDermott is entitled to qualified immunity.

5.    **Argument**

    A.    **This Court Should Dismiss the Speculative Allegations Made Against Patrick B. McDermott for Failure to State a Claim Upon Which Relief Can Be Granted.**

At first glimpse, the Plaintiffs' paint a horrifying picture of mean spirited Border Patrol agents forcibly taking innocent people into custody at gunpoint and coldly stand back while two people drowned.   However, upon harder examination of the allegations in this case, one must conclude that–as tragic as the deaths of Messrs. Vargas and Acosta-Zamora was and is--the tale as told by the Plaintiffs of the circumstances leading to their deaths was created like most  fairy-tales are–by pure speculation.

Plaintiffs original  and amended complaints set forth a rambling series of unsupported allegations that the Defendants took Messrs. Vargas and Acosta-Zamora "into custody" thus creating a "special relationship" with the defendants in this case. Defendants then took "custody and control of" inner-tubes that the aliens were using to cross the river so as to "deprive" Messrs. Vargas and Acosta-Zamora "from any flotation device should they re-enter the river". See Plaintiffs' First Amended Complaint at paras. 21 - 23. Plaintiffs then say that the Defendants "maliciously and intentionally punctured the inner tubes and cut the rope which spanned the river, so as to get Jose Guadalupe Vargas and Guillermo Acosta Zamora to return the  U.S. bank of the river." See Plaintiffs' First Amended Complaint at para. 24.

Plaintiffs continue their tale by asserting: (a) that the Defendants "believed" that Messrs. Vargas and Acosta-Zamora "could not swim" ; (b) that the Defendants "believed"  that by "denying them the inner-tubes and by cutting the rope" that Messrs.

Vargas and Acosta-Zamora "would return to the U.S. bank of the river..."; and, (c) that the Defendants prevented other persons from attempting a rescue by destroying the inner-tubes and cutting the rope that spanned the river. Plaintiffs' First Amended Complaint at paras. 24.

In *Oliver v. Scott*, 276 F.3d 736, 740, the Fifth Circuit noted that while the generic pleading requirement of Rule 8 of the Federal Rules of Civil Procedure would suffice in instances where government officials are sued in their official capacity, a heightened standard existed when a Plaintiff was making claims against a government official in his individual capacity:

> **'Plaintiffs suing governmental officials in their individual capacities, however, must allege specific conduct giving rise to a constitutional violation' [ ][3] 'This standard requires more than conclusory assertions: The Plaintiff must allege specific facts giving rise to a constitutional violation.'[4]**

Consequently, this "heightened pleading" requirement requires the Plaintiff to set forth facts that focus "specifically on the conduct of the individual who caused the Plaintiff's injury". *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

In the case at bar, there is absolutely no evidence that any of these conclusory allegations are true.    There is no evidence that McDermott (or the other Defendants in this case) ever took Messrs. Vargas and Acosta-Zamora into custody. There is no evidence that McDermott ever took custody of the inner-tubes being used by the aliens crossing the river. There is no evidence that McDermott cut a rope that spanned the river. And, there is no evidence that McDermott did anything to stop or prevent any rescue attempt.    In fact, the evidence shows that McDermott did not appear at the site of the drownings until both men drowned. *See Defendants' Exhibits' 2, 3, and 4.* Once there, the evidence shows, that McDermott readied himself to attempt a rescue in the event that one or both the men re-surfaced. *See Defendants' Exhibits 2 and 4.* Unfortunately, the opportunity never came.

Plaintiffs' complaint is replete with conclusory unsupported allegations; therefore, the allegations against McDermott should be dismissed on their face. As such the

---

[3]Quoting *Anderson v. Pasadena I.S.D.*, 184 F.3d 439, 443 (5th Cir. 1999).

[4]Quoting *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996).

allegations made against McDermott should be dismissed fo failure to state a claim upon which relief can be granted.

**B.    Overview of Qualified Immunity and Summary Judgement Standard**

In *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464-465 (5th Cir. 1999), the Fifth Circuit described the summary judgement standard as follows:

> **Summary judgement is proper when the pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, demonstrate that no genuine issue exists as to any material fact and that the movant is entitled to judgement or partial judgement as a matter of law. Fed.R.Civ.P. 56(c); *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 517-18 (5th Cir.1998).**

> **The party seeking summary judgement has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 [1986]). If the moving party carries its initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of material fact. "This showing requires more than 'some metaphysical doubt as to the material facts.' " Id. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 [1986]). While the party opposing the motion may use proof filed by the movant to satisfy its burden, " 'only evidence--not argument, not facts in the complaint--will satisfy' " the burden. Id. (quoting *Solo Serve Corp. v. Westowne Assoc.*, 929 F.2d 160, 164 [5th Cir.1991]).**

See also, *Priester v. Lowndes County,* —F.3d—, 2004 WL 32944 (5th Cir. Jan. 7, 2004)(No. 02-60750).

In the case at bar, however, Defendant George Felton is moving for summary judgement not only on the basis that there is a total lack of evidence to support the claims set forth by Plaintiffs in their complaint, but also on the basis that he is entitled to qualified immunity.

The defense of qualified immunity is the product of a series of Supreme Court decisions that began with *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  In *Harlow v. Fitzgerald*, 457 U.S. at 818, the Supreme Court found that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

Before *Harlow*, qualified immunity was sometimes referred to as "good faith and reasonable belief" immunity --which was effectively no immunity at all. The subjective branch of the two-part objective-subjective test for qualified immunity embodied in *Butz v. Economou*, 438 U.S. 478 (1978), and *Wood v. Strickland*, 420 U.S. 308 (1975), virtually guaranteed a trial because, under governing Fed.R.Civ.P. 56 principles, whether the defendant intended to act in good faith or acted maliciously was viewed as inherently an issue of fact requiring trial.

However, under current qualified immunity doctrine--beginning with *Harlow*--the defendant's subjective good faith is irrelevant. See *Harlow v. Fitzgerald*, 457 U.S. at 815-818.  Since Harlow, "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); see also *Gefer v. Fortenberry*, 882 F.2d 167, 169 (5th Cir. 1989).

The reason for this is that courts recognize that in the day-to-day discharge of their duties, government officials may make mistakes, even to the extent of violating a person's constitutional or statutory rights.  By adopting an objective "reasonable official" standard for governmental actors without reference to the defendant's subjective good faith, the court intends to afford government officials sufficient latitude to discharge their duties without fear of being enmeshed in the toils of civil litigation holding the prospect of personal liability in damages.  In effect, qualified immunity is a doctrine of judicial forgiveness for errors of judgement by government officials. *Hunter v. Bryant*, 502 U.S. 224, 228 112 S.Ct. 534, 537 (1991); see also, *Goodson v. City of Corpus Christi,* 202 F.3d 730, 736 (5th Cir. 2000) and *Glenn v. City of Tyler,* 242 F.3d 307, 312 (5th Cir. 2001).

"[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgements--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).  With this in mind, the Supreme Court has set forth a two part test to determine whether qualified immunity should apply.  First, this Court must determine "whether a 'plaintiff's allegations, if true, establish a constitutional violation'". *Williams v. Kaufman County*, 352 F.3d 994, 1002 (5th Cir. 2003), quoting *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct

-9-

2508, 153 L.Ed.2d 666(2002).  If the Court does find that Plaintiff has established a constitutional violation, then the Court must determine "whether the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* quoting *Hope*, 536 U.S. at 739 (2002).

In the case at bar, McDermott is immune from suit.

## C.    Applying Qualified Immunity to the Case at Bar

In their complaint, plaintiffs allege, *vis a vis* two causes of action, that McDermott violated decedents Jose Vargas's and Guillermo Acosta Zamora's Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution (see pages 6 and 8 of Plaintiffs' First Amended Complaint).

### (1)    Defendant Patrick B. McDermott Did Not Violate Plaintiffs (or their Decedents) Rights under the Fourth and Fifth Amendments of the United States Constitution.

Plaintiffs allege that McDermott violated the procedural and substantive due process rights of Messrs. Vargas and Acosta-Zamora by suggesting that McDermott–after taking custody of Messrs. Vargas and Acosta-Zamora by gunpoint–took possession of inner tubes being used by the duo to cross the river. Plaintiffs further assert that after the two men (Messrs. Vargas and Acosta-Zamora) jumped back into the river; and, believing that neither man could swim,[5] McDermott (as well as Agents Zaehringer and Felton) deliberately destroyed the inner-tubes that were earlier confiscated and cut a rope that spanned the river in a deliberate attempt to thwart the mens' escape and/or their rescue.  (See Paragraph 24 of the Plaintiffs' First Amended Complaint).   Aside from these allegations being completely baseless and lacking any credible support, the Plaintiffs claims fail to overcome Defendant Patrick B. McDermott's claim for qualified immunity.

The essence of the Fourth Amendment is a balancing test, weighing the individual's expectation of privacy against the governmental interest in investigating and preventing crime.  See *United States v. Leon*, 468 U.S. 897, 901-14 (1984).  The amendment itself draws the line:  the seizure must be reasonable.  *Graham v. Connor*,

---

[5]Plaintiffs never explain why the decedents would jump into the river and attempt to swim back to Mexico if they didn't know how to swim in the first place.

490 U.S. 386, 392-99 (1989).  This "reasonableness" inquiry directs this Court to determine whether Felton's actions were "objectively reasonable" in light of the facts and circumstances confronting him--without regard to his underlying intent or motivation.  Id at 396-97.

Looking to the case at bar, Plaintiffs have absolutely no evidence to show that McDermott ever arrested, detained, seized, or searched the plaintiffs' decedents or their belongings or property--much less, did so without probable cause.  *See Defendants' Exhibit 4.*

Likewise, any Fifth Amendment claims that McDermott unconstitutionally deprived Messrs. Vargas and Acosta-Zamora of their lives, must fail.   Messrs. Vargas and Acosta-Zamora, for whatever reason, chose to go into the river.

Again, there is no evidence that these men were ever in the custody of McDermott or any of the Defendants that day.   See Defendant's Exhibits 1, 2, 3, and 4.  McDermott--who was not even on the scene when the incident occurred--was under no duty to effect a rescue of Messrs. Vargas and Acosta-Zamora.  The Fifth Circuit has held that liability of a *Bivens*[6] defendant can only be predicated on their actual knowing participation in the alleged unconstitutional conduct.  See,  *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998).   In the case at bar, Plaintiffs have no evidence indicating that Defendant Patrick McDermott ever saw the decedents much less acted and knowingly participated in acts that violated the decedents' constitutional rights.

Therefore, judgement as to any Fourth and Fifth Amendment violation claims should be rendered in favor of McDermott and against the Plaintiffs.

**(2)    Any Fourteenth Amendment Claims Should be Dismissed for Failure to State Claim because the Fourteenth Amendment applies only to persons Acting under Color of State Authority.**

"The Fourteenth Amendment, by definition, requires state action."  *McGuire v. Turnbo*, 137 F.3d 321, 323 (5th Cir. 1998), citing to U.S. CONST. amend. XIV.   The Plaintiffs in this case are suing Patrick B. McDermott, as a result of actions (or omissions) as a federal employee.  As a matter of law, Plaintiffs cannot maintain a Fourteenth Amendment claim against a federal employee for actions he took as a federal employee.  *Id.*

---

[6]*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

It is worthy to note, however, that the Fifth Circuit has examined situations where it is alleged that state actors violated an individual's Fourteenth Amendment rights by preventing a rescue. In determining whether a state officer is entitled to qualified immunity, the Fifth Circuit has looked to such factors as "the safety of those involved" as well as whether the officer used his authority to cut off all avenues of rescue. *Salas v. Carpenter*, 980 F.2d 299, 307 (5th Cir.1992).

In this case, Plaintiffs alleged that the Defendants prevented other persons they had in their custody from attempting a rescue. *(See Plaintiffs' First Amended Complaint, para. 24)*. This contention is not supported by the evidence. No one in the defendants' custody indicated that they wanted to attempt a rescue; however, if they had, none of the agents would not have permitted any of the detainees to enter the dangerous waters for fear that they would succumb to the same fate as Messrs. Vargas and Zamora. *See Defendants' Exhibits 2, 3, and 4.* If anything, such conduct should be interpreted as the Defendants' attempts to use their authority to prevent more tragic deaths.

Finally, there is no evidence that any of the defendants did anything to interfere with any rescue attempts made by other third parties that day. See *Defendants' Exhibits 2, 3, and 4.*

Plaintiffs have failed to establish any Fourteenth Amendment violation. Therefore, if not dismissed, judgement should be rendered for Defendant Patrick B. McDermott as to any Fourteenth Amendment claims.

## 6.   **Conclusion**

Patrick B. McDermott, should be dismissed from this lawsuit because the Plaintiffs have failed to state a claim upon which relief can be granted against him. McDermott was not present when the incident occurred and Plaintiffs broad sweeping allegations fail to specifically identify what action of McDermott's violated the decedents' constitutional rights.

Alternatively, Patrick B. McDermott, should be deemed immune from liability for the constitutional violations alleged by the plaintiffs and judgement should be rendered

in his favor against the Plaintiffs. Plaintiffs have failed to adequately allege or support the existence of the violation of either of the decedents constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

NANCY L. MASSO
Assistant United States Attorney
600 E. Harrison St., No. 201
Brownsville, Texas 78520
Tel:  (956) 548-2554
Fax: (956) 548-2549
State Bar No. 00800490
Federal I.D. No.  10263

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the true and foregoing copy of DEFENDANT PATRICK B. McDERMOTT'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FRCP AND ALTERNATIVE MOTION FOR SUMMARY JUDGEMENT was mailed, via certified mail, return receipt requested, on February 5, 2004, to Plaintiffs' attorney, Gregory W. Moreno and Arnoldo Casillas at MORENO, BECERRA, GUERRERO & CASILLAS, 3500 West Beverly Blvd., Montebello, CA 90640.

NANCY L. MASSO
Assistant United States Attorney

-13-