United States District Court
Southern District of Texas
FILED

FEB 2 5 2004

Michael N. Milby
Clerk of Court

1  ARNOLDO CASILLAS, ESQ., State Bar No. 158159
MORENO, BECERRA, GUERRERO & CASILLAS
2  A Professional Law Corporation
3500 West Beverly Boulevard
3  Montebello, CA 90640-1541
Tel: (323) 725-0917
4  Fax: (323) 725-0350

5  Attorneys for Plaintiffs
Estate of Jose Vargas, by and through Maria
6  H. Covarrubias, Administrator and Successor in
Interest; Ricardo Vargas, a minor, by and through
7  his guardian Maria H. Covarrubias; Maria H.
Covarrubias; Jose G. Vargas Mendoza; Angelina
8  Valencia Morales;Estate of Guillermo Acosta Zamora,
by and through Maria Teresa Alvarado Mendez,
9  Administrator and Successor In Interest; Maria
Teresa Alvarado Mendez; Victor H. Acosta
10  Alvarado; Ronald Acosta Alvarado; and, Luis
Alberto Acosta Alvarado

11

12  **UNITED STATES DISTRICT COURT**

13  **FOR THE SOUTHERN DISTRICT OF TEXAS**

**BROWNSVILLE DIVISION**

14

15  Estate of Jose Vargas, by and through Maria   )   **CASE NO:** CASE NO: B-02-132
H. Covarrubias; Administrator and Successor )
16  in interest;  Ricardo Vargas, a minor, by and  )
through his guardian Maria H. Covarrubias;  )   **PLAINTIFFS' OPPOSITION TO**
17  Maria H. Covarrubias; Jose G. Vargas  )   **DEFENDANT DANIEL**
Mendoza; Angelina Valencia Morales; Estate )   **ZAEHRINGER'S MOTION TO**
18  of Guillermo Acosta Zamora, by and through )   **DISMISS COMPLAINT;**
Maria Teresa Alvarado Mendez,  )   **MEMORANDUM OF POINTS AND**
19  Administrator and Successor in interest;  )   **AUTHORITIES; DECLARATIONS**
Maria Teresa Alvarado Mendez; Victor H.  )   **OF FERNANDO DEL RIO**
20  Acosta Alvarado; Ronald Acosta Alvarado;  )   **VARGAS, ROBERTO VARGAS**
and, Luis Alberto Acosta Alvarado,  )   **VARGAS, CARMELO ABUNDIS**
21                                          )   **AND ARNOLDO CASILLAS IN**
Plaintiffs,   )   **SUPPORT THEREOF**
22                                          )
v.   )
23                                          )
Five Unknown INS/Border Patrol Agents;  )
24  U.S. Department of Immigration and  )
Naturalization; United States Border Patrol;  )
25  United States of America, and DOE  )
defendants 1-10, inclusive,  )
26                                          )
Defendants.   )
27  _____  )

28

1   COME NOW PLAINTIFFS Estate of Jose Vargas, by and through Maria H.

2   Covarrubias; Administrator and Successor in interest;  Ricardo Vargas, a minor, by and

3   through his guardian Maria H. Covarrubias; Maria H. Covarrubias; Jose G. Vargas

4   Mendoza; Angelina Valencia Morales; Estate of Guillermo Acosta Zamora, by and

5   through Maria Teresa Alvarado Mendez, Administrator and Successor in Interest, Maria

6   Teresa Alvarado Mendez, Victor H. Acosta Alvarado, Ronald Acosta Alvarado, and,

7   Luis Alberto Acosta Alvarado, and submit their Opposition to Defendant DANIEL

8   ZAEHRINGER'S Motion to Dismiss Plaintiffs' Complaint for failure to state a claim

9   upon which relief may be granted and in the alternative, Motion for Summary Judgment.

10   For the following reasons, PLAINTIFFS submit that the present motion should be

11   denied:

12       1.    Plaintiffs sufficiently plead actions and failures to act committed by

13           Defendant DANIEL ZAEHRINGER to hold him liable to PLAINTIFFS,

14           and Plaintiffs offer declarations of witnesses to substantiate their allegations

15           - thereby creating triable issues of fact;

16       2.    Defendants motion provides no legally recognized  basis for dismissal of

17           PLAINTIFFS' claims for procedural and substantive due process

18           violations;  Plaintiffs offer declarations of witnesses to substantiate their

19           allegations - thereby creating triable issues of fact as to this issue;

20       3.    Defendant ZAEHRINGER is not entitled to qualified immunity;

21       4.    Alternatively, the present Plaintiffs request this court's leave to amend the

22           complaint, in the event that the court should determine that Defendant's

23           arguments have merit.

24       5.    Plaintiffs have raised triable issues of facts as to the reasonableness of the

25           defendant officers' conduct related to their cutting off of a rescue attempt

26           and thereafter failing to take any action to rescue the drowning persons.

27   ////

28   ////

1       This opposition is based upon this Opposition, the attached Memorandum of

2   Points and Authorities and related exhibit, the Declarations of witnesses Fernando Del

3   Rio Vargas, Roberto Vargas Vargas and Carmelo Abundis, the Court's file and records in

4   this matter, and upon such oral and evidentiary evidence presented at the hearing of this

5   Motion.

6                                           Respectfully submitted,

7                                           MORENO, BECERRA, GUERRERO & CASILLAS
                                        A Professional Law Corporation

8

9   DATED: February 25, 2004      By:

10                                          ARNOLDO CASILLAS
                                        Attorneys for Plaintiffs

11                                          Estate of Jose Vargas, by and through Maria H.
                                        Covarrubias; Administrator and Successor in

12                                          interest;  Ricardo Vargas, a minor, by and
                                        through his guardian Maria H. Covarrubias;

13                                          Maria H. Covarrubias; Jose G. Vargas
                                        Mendoza; Angelina Valencia Morales; Estate of

14                                          Guillermo Acosta Zamora, by and through
                                        Maria Teresa Alvarado Mendez, Administrator

15                                          and Successor in Interest; Maria Teresa
                                        Alvarado Mendez; Victor H. Acosta Alvarado;

16                                          Ronald Acosta Alvarado; and, Luis Alberto
                                        Acosta Alvarado

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................. 1

II.   STATEMENT OF RELEVANT FACTS .............................. 1

III.  PLAINTIFFS ANSWERED THE REQUESTS FOR ADMISSIONS. ........ 3

IV.   STANDARD GOVERNING 12(B)(6) MOTIONS AND

      MOTIONS FOR SUMMARY JUDGMENT. ........................... 4

V.    PLAINTIFFS STATE SUFFICIENT FACTS TO SUPPORT A CLAIM FOR
      VIOLATION OF THEIR SUBSTANTIVE AND PROCEDURAL DUE
      PROCESS RIGHTS AND RAISE TRIABLE ISSUES OF FACTS AS TO THESE
      CLAIMS ...................................................... 9

      A.    The Allegations Made in Plaintiffs First Amended
            Complaint Must Be Taken as True For Purposes
            of a Rule 12(b)(6) Motion and the Witness Declarations
            Substantiate the Allegations in the Complaint and
            Raise Triable Issues of Fact.. ........................... 5

      B.    Defendant Zaehringer Owed Decedents a Special Duty by Virtue of
            Having Interfered with a Rescue Attempt and by Virtue of Plaintiffs'
            Decedents Having Been in Custody.. ...................... 9

VI.   DEFENDANT DANIEL ZAEHRINGER IS NOT ENTITLED TO QUALIFIED
      IMMUNITY SINCE HIS CONDUCT CONSTITUTES A VIOLATION OF A
      CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT. .............. 10

      1.    Plaintiffs Have Established a Due Process Violation. ........ 11

      2.    The Constitutional Law Pertaining to Custodial Special Duties and
            State Interference with Private Rescue Attempts is Well Established.
            ........................................... 13

VII.  ALTERNATIVELY, PLAINTIFFS RESPECTFULLY REQUEST THIS
      COURT'S LEAVE TO AMEND THEIR COMPLAINT ................. 14

VIII. CONCLUSION. ............................................... 14

1
## **TABLE OF AUTHORITIES**

2
## **CASES**

3    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986).  . . . . . . . . . . . 5

4    Bolling v. Sharpe, 347 U.S. 497,  74 S.Ct. 693 (1954).  . . . . . . . . . . . . . . . . . . . . . . . . . 10

5    Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5ᵗʰ Cir. 1986) . . . . . . . . . . . . . . . . . . . 6

6    Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7    DeShaney v. Winnebago Cty. Dept. of Soc. Serv., 489 U.S. 189,

8    109 S.Ct. 998 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

9    Foman v. Davis, 83 S.Ct. 227 (1962)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

10   Hitt v. City of Pasadena 561 F. 2d 606, 608 (5ᵗʰ Cir. 1977) . . . . . . . . . . . . . . . . . . . . 4

11   Jackson v. City of Joliet, 715 F. 2d 1200 (7ᵗʰ Cir. 1983) . . . . . . . . . . . . . . . . . . . . . 4, 7

12   Mann v. Adams Realty Co., Inc. 556 F.2d 288, 293 (5ᵗʰ Cir. 1977) . . . . . . . . . . . . . . 5

13   McClendon v. City of Columbia, 305 F. 3d 314 (5ᵗʰ Cir. 2002) . . . . . . . . . . . . . . 12, 13

14   Pickens v. Equitable Life Assur. Soc.of the U.S. 413 F. 2d 1390 (5ᵗʰ Cir. 1969)  . . . 3, 4

15   Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp., 198 F.3d 548 (5th Cir.2000)  . . 5

16   Ramming v. United States of America, 281 F.3d 158 (5ᵗʰ Cir. 2001) . . . . . . . . . . . . . 4

17   Randolph v. Cervantes, 130 F. 3d 727 (5ᵗʰ Cir. 1997)  . . . . . . . . . . . . . . . . . . . . . 9, 10

18   Ross v. United States, 910 F.2d 1422 (7ᵗʰ Cir.1990)  . . . . . . . . . . . . . . . . . . . . . . . 8, 11

19   Saenz v. Heldenfels Brothers, Inc., 183 F. 3ʳᵈ 389 (5ᵗʰ Cir. 1999) . . . . . . . . . . . . . 11, 13

20   Salas v. Carpenter, 980 F. 2d 299 (5ᵗʰ Cir. 1992) . . . . . . . . . . . . . . . . . . . 7, 8, 9, 11, 13

21   Scheuer v. Rhodes, 416 US 232, 94 S. Ct 1683, (1974)  . . . . . . . . . . . . . . . . . . . . . . . 5

22   Schlesinger v. Ballard, 419 U.S. 498, 95 S.Ct. 572, (1975)  . . . . . . . . . . . . . . . . . . . . 10

23   Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789 (1991)  . . . . . . . . . . . . . . . . . . . . . . . 10

24   Travelers Cas. & Sur. Co. of Am. v. Baptist Health Sys., 313 F.3d 295 (5th Cir.2002)    5

25   United States of America, Ex Rel, Joyce Riley v. St. Luke's Episcopal Hospital, et al.,

26   2004 WL 42627 (5ᵗʰ Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

27
## **STATUTES AND RULES**

28   42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10

     Rule 12(b)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 7

1

Federal Rule of Civil Procedure 8(a)(2) .................................. 4, 5

Federal Rule of Civil Procedure 36(a) ..................................... 3

Federal Rule of Civil Procedure 56(c) ..................................... 5

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES
## I.
## INTRODUCTION

Defendant DANIEL ZAEHRINGER ("Defendant") moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Alternatively, Defendant argues that he is entitled to qualified immunity since Plaintiffs have failed to establish a constitutional violation. As discussed herein, Plaintiffs submit that they have alleged sufficient facts to state claims for violation of their substantive and procedural due process rights and therefore Defendant is not entitled to qualified immunity. When Plaintiffs' allegations are deemed true and viewed in the light most favorable to Plaintiffs, Defendant's motion must fail.

Moreover, Plaintiffs submit the declarations of witnesses to the events underlying this action which raise triable issues of fact.

## II.
## STATEMENT OF RELEVANT FACTS

As is relevant here, the complaint alleges the following facts. On or about July 1, 2000, GEORGE F. FELTON III, DANIEL ZAEHRINGER, PATRICK B. MCDERMOTT, and two other unknown INS/Border Patrol Agents ("Defendants") while engaged in the regular course of their duties in patrolling and observing the US/Mexico Border, observed a group of persons crossing the Rio Grande in the general location of Brownsville, Texas, from the Mexican bank of that river to the U.S. bank of the river. Said Defendants observed that the group consisted of both men and women of various ages. These individuals were utilizing rubber inner-tubes attached to a rope which spanned the length of the river to reach the U.S. river bank. In the late afternoon hours, all members of our group successfully crossed the river through the use of the referenced inner tubes.

Upon crossing the river, said inner tubes were placed on the ground at the group's gathering site. Once all the group members were on U.S. territory, they changed into dry clothes which were carried in plastic, water resistant bags. Almost immediately after the group had changed clothes, approximately 5 White Immigration and Naturalization

- 1 -

1   Service (INS) Agents suddenly appeared, with guns unholstered and pointed at the

2   individuals in the group.  Decedents Jose Guadalupe Vargas and Guillermo Acosta

3   Zamora were among those restrained by the Agents threat of gunfire.  Using broken

4   Spanish and some English the Agents identified themselves in as officers of the U.S.

5   Department of Immigration and Naturalization and/or as officers of the U.S. Border

6   Patrol.

7         Once in custody, Decedents Jose Guadalupe Vargas and Guillermo Acosta Zamora

8   re-entered the river and attempted to return to the Mexico river bank.  However, almost

9   immediately upon doing so, the Decedents began to obviously struggle in the waters and

10  yell out for help as they were submerging into the river.  Neighboring private individuals

11  who were observing this struggle both on the Mexican and U.S. river banks quickly

12  responded in an attempt to render rescue by reaching for the inner tubes on the ground to

13  get them to the drowning men.  Those on the Mexican border similarly tried to pull the

14  rope which spanned the river and was attached to the inner tubes, so as to pull them

15  towards the victims.

16        However, upon seeing this rescue attempt in progress, Defendants, including

17  ZAEHRINGER immediately drew their knife and punctured the inner tubes and severed

18  the subject rope, so as to prevent the rescue of the decedents from being effectuated.  As a

19  result of the failed rescue attempted,  Jose Guadalupe Vargas and Guillermo Acosta

20  Zamora began to struggle and drowned in the river.  But for Defendants' cutting the rope

21  and puncturing the inner-tubes, they would have survived.

22        The above facts are attested to by witnesses Fernando Del Rio Vargas, Carmelo

23  Abundis and Roberto Vargas Vargas.  See generally, Exhibit 1 -3, Declarations of

24  Fernando Del Rio Vargas, Carmelo Abundis and Roberto Vargas Vargas.

25        These declarations establish that Plaintiffs' decedents were part of a group of

26  persons that crossed the river in question via inner tubes and a rope strung across the

27  river.  The group of persons then gathered on the river bank and changed into dry clothes.

28   The inner tubes were placed on the ground at the gathering site.  INS agents (who we

- 2 -

1   now know to be defendants McDermott, Zaehringer and Felton) appeared suddenly and

2   had the persons freeze and raise their hands.  Plaintiffs' decedent jumped into the river to

3   attempt to cross back to the Mexican bank.  Witness Carmelo Abundis returned

4   successfully.  Plaintiffs' decedents began to struggle in the water.  The agents did

5   nothing to assist the drowning men.  Witness Abundis attempted to pull the inner tubes

6   back into the water to assist the drowning men by pulling on the rope to which the inner

7   tubes were attached.   As Abundis attempted to do this, one of the agents punctured the

8   inner tubes to prevent the rescue and cut the rope, thereby ending the rescue efforts.  After

9   having squelched the rescue attempt, the agents failed to take any other measures to assist

10  the drowning men.  See generally, Exhibit 1 -3, Declarations of Fernando Del Rio Vargas,

11  Carmelo Abundis and Roberto Vargas Vargas.

12                                     **III.**

13        **PLAINTIFFS ANSWERED THE REQUESTS FOR ADMISSIONS.**

14        On August 26, 2003, Plaintiffs answered the requests for admission at issue.

15  Attached is a copy of the responses. See, Exhibit 4.

16        Moreover, the law on Rule 36(a) is quite clear when deemed admissions involve

17  facts central to the case, and therefore determine its merits.  In Pickens v. Equitable Life

18  Assurance Society of the United States, 413 F. 2d 1390 (1969) the court made clear that

19  Requests for Admissions as to central facts in dispute are beyond the scope of the rule

20  providing that requested admissions shall be deemed admitted if not answered.  In

21  Pickens, the issue of suicide was crucial to a determination of the case, and the court held

22  that the plaintiff's failure to reply to the request did not fall within the ambit of Rule 36(a)

23  and did not constitute an admission of suicide. Pickens, 413 F. 2d at 1393.  The court

24  stressed that since the omission was clearly inadvertent rather than deliberate, it would be

25  grossly unjust to treat it as a judicial admission. Id. at 1394.

26        In the instant case, Plaintiffs' failure to respond to Defendant's Request for

27  Admission, within 30 days, was inadvertent and not deliberate. Declaration of Arnoldo

28  Casillas at P. 2, ¶ 4.

1       The issues encompassed in Defendants' Requests for Admissions are crucial to the

2   determination of the case and constitute central facts in dispute.  Whether the decedents

3   were in the custody of Defendants, whether the Defendants ever unholstered and drew

4   their weapons, and whether the Defendants prevented a rescue are all key issues in the

5   case which go to its merits.

6       Moreover, defendants admit many some of these very facts in their declarations

7   they offer in support of their motions.   For example, defendant Felton admits to "quickly

8   unsnapping his holster and partially lifting his pistol from the holster."  Defendant

9   Felton's Brief in Support of his Motion at P. 3.

10       Allowing for these core facts to be determined by way of a deemed admission

11   would be, as characterized by <u>Pickens</u>, grossly unjust.  In addition, the record

12   demonstrates that Defendants have not detrimentally relied on these deemed admissions

13   since they did not raise the issue until the instant 12(b)(6) Motion to Dismiss was filed.

14   Nor did they bring the issue of the late answers to the attention of plaintiff's counsel.

15   
16   

**IV.**
**STANDARD GOVERNING 12(b)(6) MOTIONS AND MOTIONS FOR**
**SUMMARY JUDGEMENT.**

17       A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the

18   complaint.  Thus, if the complaint states a claim under any possible legal theory, the

19   complaint should not be dismissed.  <u>Ramming v. United States of America</u>, 281 F.3d 158

20   (5th Cir. 2001).  Moreover, when considering a Rule 12(b)(6) motion to dismiss for failure

21   to state a claim, the district court must act consistent with the well established policy that

22   the plaintiff be given every opportunity to state a claim.  <u>Hitt v. City of Pasadena 561 F.</u>

23   <u>2d 606, 608 (5th Cir. 1977)</u>.  Under this liberal system of "notice pleading", governed by

24   Federal Rule 8(a)(2), a claimant is not required to set out in detail the facts upon which

25   his claim is based.  The Rule simply requires "a short and plain statement of the claim"

26   that will give the defendant fair notice of what the plaintiff's claim is and the grounds

27   upon which it rests.  <u>Fed. Rule Civ. Proc. 8(a)(2)</u>.

28   ////

- 4 -

1    Thus, a complaint should not be dismissed for failure to state a claim unless it

2    appears beyond a doubt that the plaintiff cannot prove any facts supporting his claims

3    entitling him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99. Further, all

4    material allegations in a complaint must be taken as true and viewed in the light most

5    favorable to the plaintiff. <u>Mann v. Adams Realty Co.</u>, Inc. 556 F.2d 288, 293 (5th Cir.

6    1977); <u>Scheuer v. Rhodes</u>, 416 US 232, 94 S. Ct 1683, (1974).

7    Under Fed.R.Civ.P. 56(c), district courts properly grant summary judgment if,

8    viewing the facts in the light most favorable to the nonmovant, the movant shows there is

9    no genuine issue of material fact such that the movant is entitled to judgment as a matter

10   of law. <u>Travelers Cas. & Sur. Co. of Am. v. Baptist Health Sys.</u>, 313 F.3d 295, 297 (5th

11   Cir.2002) (citing Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp., 198 F.3d 548,

12   550 (5th Cir.2000)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106

13   S.Ct. 2505, 91 L.Ed.2d 202 (1986).

14

15
16
17

**V.
PLAINTIFFS STATE SUFFICIENT FACTS TO SUPPORT A CLAIM
FOR VIOLATION OF THEIR SUBSTANTIVE AND PROCEDURAL
DUE PROCESS RIGHTS AND RAISE TRIABLE ISSUES OF FACTS
AS TO THESE CLAIMS**

18
19
20

**A.    The Allegations Made in Plaintiffs First Amended
Complaint Must Be Taken as True For Purposes
of a Rule 12(b)(6) Motion and the Witness Declarations
Substantiate the Allegations in the Complaint and
Raise Triable Issues of Fact.**

21   Defendant argues that Plaintiffs fail to state a claim for violation of their

22   constitutional rights because Plaintiffs have failed to provide evidence for their

23   allegations. Additionally, Defendant argues that a heightened pleading standard should

24   apply over that which is dictated by Rule 8 of the Federal Rules of Civil Procudure,

25   because the Defendant ZAEHRINGER is apparently sued in his individual capacity.

26   In making these arguments, however, Defendant ZAEHRINGER has conveniently

27   chosen to ignore the governing standard of review for 12(b)(6) motions which takes all

28   allegations contained in the complaint as true, without the need for provision of evidence.

1  Further, Plaintiffs' complaint clearly alleges that Defendant ZAEHRINGER committed

2  all acts and omissions described in the complaint while "acting under color of law, to wit,

3  the laws, statutes, regulations, orders and policies of the United States of America...and

4  within the course and scope of their employment with defendants U.S. Department of

5  Immigration and Naturalization...." (First Amended Complaint, ¶6, Lines 5-10).  As

6  such, Defendant ZAEHRINGER is being sued for the acts and omissions he committed

7  while acting in his official capacity as a border patrol agent, not as a private individual.

8  Therefore this heightened pleading standard endorsed by Defendant is inapplicable.

9       In <u>United States of America, Ex Rel, Joyce Riley v. St. Luke's Episcopal Hospital</u>,

1  Plaintiffs' allegations fail to state a cognizable claim.  He simply argues as did the District
2  Court in United States of America, Ex Rel. Joyce Riley, that the allegations are based on
3  conjecture and since Plaintiffs have failed to provide any evidence in their complaint
4  supporting a constitutional violation, their complaint should be dismissed.  However, as
5  held by the court's decision in  United States of America, Ex Rel. Joyce Riley, this is the
6  wrong standard to apply in reviewing a Rule 12(b)(6) motion.  Plaintiffs need not provide
7  evidence.  Simply, the allegations asserted in their complaint must be deemed true, even
8  without evidentiary support, when deciding whether a claim exists for which relief can be
9  granted.   Notwithstanding this, Plaintiffs have provided with the present responding
10  papers, declarations of three eye-witnesses which buttress and substantiate the allegations
11  made in Plaintiffs' complaint.

12       Accordingly, Plaintiffs submit that the facts as alleged in their Complaint are
13  sufficient to state a claim for constitutional violations of Decedent's and Plaintiffs' rights
14  as a result of Defendants' having intentionally and/or recklessly cut off all private avenue
15  of lifesaving rescue without providing an alternative.   Likewise, the declarations
16  substantiate these alleged facts and create a triable issue of fact as to these questions.

17       The court in Salas v. Carpenter, 980 F. 2d 299, 307-308 (5th Cir. 1992), clarified
18  the law as it pertains to officer interference with private rescues.  The Salas court,
19  upholding the position endorsed by the Seventh Circuit, found that officials who
20  arbitrarily prevent the rescue of persons in known danger deny due process if they act
21  with the requisite mental state.  Salas, 980 F. 2d at 307.  In its analysis the court cited to
22  Jackson v. City of Joliet, 715 F. 2d 1200 (7th Cir. 1983) in which no constitutional
23  violation was found where a police officer failed to discover that a burning car contained
24  accident victims and directed traffic away from the vehicle thereby preventing a rescue.
25  The Salas court clarified that had the officer known the car was occupied and wanting the
26  occupants to be burned to death, directed traffic away from the scene in order to prevent
27  any passing driver from saving them, he would be liable under 42 U. S. C. Section 1983,
28  for having deprived the plaintiffs' decedents of their lives without due process of law,

- 7 -

1    while acting under color of law. <u>Id.</u> at 307

2    ////

3        Here, as in the hypothetical described in <u>Salas</u>, Plaintiffs' Complaint clearly

4    alleges that Defendants, including ZAEHRINGER, at no time attempted to assist the

5    drowning men and instead affirmatively took measures which were intended to create a

6    drowning danger for Decedents. (See, First Amended Complaint ¶26). The complaint

7    clearly states that other persons attempted to help the decedents through the use of the

8    inner tubes and rope, however were prevented from doing so by the acts of Defendants.

9    (<u>See</u>, First Amended Complaint ¶24; <u>See also</u>, <u>Decl. of Fernando Del Rio Vargas</u> at P. 3,

10    ////

11    ¶¶15-17, <u>Decl. of Carmelo Abundis</u>, P.3-4, ¶¶13-17; <u>Decl. of Roberto Vargas Vargas</u> P.3-

12    4, ¶¶13-19.

13        Clearly, Defendants' acts and omissions were committed with the requisite

14    intentional mental state. In doing so they deprived Decedents of their lives without the

15    due process of law, hence making them liable under 42 U.S.C. Section 1983.

16        The <u>Salas</u> court made reference to yet another Seventh Circuit case which also

17    helps to enumerate the status of the law as it pertains to constitutional violations resulting

18    from failure to render aid. This case is <u>Ross v. United States</u>, 910 F.2d 1422, 1433 (7th

19    Cir.1990). In <u>Ross</u>, a twelve-year-old boy fell into a lake, and several minutes after he

20    had been submerged, many individuals arrived on scene in order to attempt a rescue.

21    <u>Ross</u>, 910 F. 2d at 1433. However, a patrolling county sheriff prohibited anyone from

22    entering the lake, making threats of arrest, and asserted a county policy which stated that

23    only fire department divers were allowed to effectuate rescues. The <u>Salas</u> court endorsed

24    the holding in <u>Ross</u> which declared that the deputy had violated the child's constitutional

25    rights by "cutting off private avenues of lifesaving rescue without providing an

26    alternative. <u>Id.</u> at 1432.

27        Here as in <u>Ross</u>, the Border Patrol Agents, including ZAEHRINGER, also cut off

28    all private avenues of life saving rescue without providing an alternative. This was

1  effectuated from the point at which Defendants punctured the inner tubes and severed the

2  connecting rope.  In Paragraph 16 of Plaintiffs' First Amended Complaint, they allege

3  that when decedents began to struggle in the water, private individuals standing by

4  attempted to rescue the drowning men by reaching for the inner tubes.

5      However, Defendants, including ZAEHRINGER, quick grabbed the tubes and

6  punctured them, thus preventing a rescue and cutting off all avenues of life saving rescue.

7      **B.    Defendant Zaehringer Owed Decedents a Special Duty by Virtue
           of Having Interfered with a Rescue Attempt and by Virtue of
8          Plaintiffs' Decedents Having Been in Custody.**

9      The law has clearly established that the state's failure to protect a person can

10  amount to a deprivation only if the state has a duty to act.  Hence, generally the state's

11  failure to protect an individual against private violence does not constitute violation of the

12  Due Process Clause.  Randolph v. Cervantes, 130 F. 3d 727 (5th Cir. 1997).  Some

13  settings, however, create a special relationship between the state and a person, imposing a

14  duty to protect that person.  DeShaney v. Winnebago Cty. Dep't of Social Services, 489

15  U.S. 189, 109 S.Ct. 998 (1989).  This substantive due process right to protective services

16  exists when the state, by its affirmative exercise of power,  holds persons in custody or

17  similarly limits their ability to care for themselves.  Salas v. Carpenter, 980 F. 2d 299,

18  308 (5th Cir. 1992).

19      A constitutional duty to protect an individual may even exist in a non-custodial

20  setting if the state has taken affirmative action to increase the individual's danger of, or

21  vulnerability to such violence beyond the level it would have been at absent state action.

22  Salas, 980 F. 2d at 308.  Moreover, even if no custody were alleged or found, Defendant

23  was still required to provide assistance to decedents since by puncturing the inner tubes

24  and severing the subject rope, he effectively increased decedents' vulnerability to danger

25  beyond the level it would have been absent state action and left decedents in a worse

26  position than they would have been had the Agents not gotten involved.

27      The facts alleged in the complaint as well as the declarations submitted by

28  Plaintiffs substantiate that the defendant agents in this case increased the drowning

1   individual's danger by cutting off the rescue attempt.   Having done so, they were duty

2   bound to act reasonably to save the drowning persons.   They failed to take any such

3   action.   Liability therefore attaches.

4        Moreover, in the instant case, Plaintiffs' complaint clearly alleges that Defendants

5   had created the referenced danger and threat to Decedents' safety *after* having taken them

6   into custody.   (See First Amended Complaint, ¶23).   In Paragraph 21, Plaintiffs state that

7   "defendants had detained Jose Guadalupe Vargas and Guillermo Acosta Zamora and held

8   them in custody under gunpoint."   At this latter point, Defendants had taken the

9   affirmative step of restraining decedents' liberty so that they were rendered unable to care

10  for themselves.   Randolph v. Cervantes, 130 F. 3d at 730 (5th Cir. 1997).   As such,

11  Defendants, including ZAEHRINGER, were duty bound to protect and render assistance

12  to Jose Guadalupe Vargas and Guillermo Acosta Zamora when they were drowning in the

13  river.

**VI.**

14
**DEFENDANT DANIEL ZAEHRINGER IS NOT ENTITLED TO**
15  **QUALIFIED IMMUNITY SINCE HIS CONDUCT CONSTITUTES A**
**VIOLATION OF A CLEARLY ESTABLISHED CONSTITUTIONAL**
16  **RIGHT.**

17        Defendant alternatively argues that he is entitled to qualified immunity from suit

18  since his actions did not rise to the level of a constitutional violation. The Supreme Court

19  has held that the Fifth amendment's due process clause "prohibits the Federal Government from

20  engaging in discrimination that is 'so unjustifiable as to be violative of due process.' "

21  Schlesinger v. Ballard, 419 U.S. 498, 500 n.3, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975), quoting

22  Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954).   Plaintiffs' First

23  Amended Complaint cites both the Fourteenth and Fifth Amendments as serving as the

24  basis for their claims.   Complaint at P.2, ¶1.

25        In Siegert v. Gilley, 500 U.S. 226, 232-234, 111 S.Ct. 1789 (1991), the Supreme

26  Court established that courts  evaluating §1983 claims should conduct a two-prong

27  inquiry to determine whether a defendant state actor is entitled to qualified immunity.

28  The first prong inquires as to whether a constitutional right would have been violated on

- 10 -

1    the facts alleged. The second asks whether the right violated was clearly established.

2                   **A.    Plaintiffs Have Established a Due Process Violation.**

3          As explained supra, Plaintiffs' complaint contains sufficient facts to allege a

4    constitutional violation of Decedents' due process rights. The supporting witness

5    declarations substantiate the allegations. The Fifth Circuit has made clear that a

6    constitutional violation lies whenever a state official cuts off all private avenue of

7    lifesaving rescue without providing an alternative. In Saenz v. Heldenfels Brothers, Inc.,

8    183 F. 3rd 389, 391 (5th Cir. 1999), the Court of Appeals reaffirmed the opinion in Salas v.

9    Hermosillo, 980 F. 2d 299, (5th Cir. 1992) which adopted the Seventh Circuit's view on

10   state interference with private rescues. In Saenz, the court reiterated that a government

11   officer can be held liable if he knows a victim faces actual distress but uses his authority

12   to interfere or prohibit assistance, thereby directly increasing the harm suffered by the

13   victim. Saenz was an action brought by survivors of motorists killed when a drunk

14   driver struck their car, just minutes after a deputy sheriff had ordered a reserve deputy to

15   refrain from investigating said drunk driver for driving under the influence. Saenz, 183 F.

16   3rd at 390. The court held that since the officer did not know that the victim faced actual

17   distress, there was no violation. In its analysis, the court distinguished the case's facts to

18   those in Ross v. United States, 910 F. 2d 1422 (7th Cir. 1990) as cited to in the Salas

19   opinion. It reaffirmed that the deputy in Ross had committed a constitutional tort by

20   ordering qualified bystanders not to rescue a drowning boy; he prevented the rescue of

21   someone he knew to be in danger. Id. at 391.

22         Here, in light of the court's holdings in Saenz, Salas and Ross, Plaintiffs' have

23   alleged a clear constitutional violation and offer witness declarations which support and

24   substantiate these allegations. In fact, the circumstances involved herein, are substantially

25   similar to those in Ross. Decedents, like the boy in Ross, were in obvious danger,

26   struggling and at some points submerged in water upon entering the river. Despite their

27   calls for help and despite a promising rescue attempt which was sure to save their lives,

28   Defendant used his authority to prevent and/or interfere with this private rescue attempt.

- 11 -

1   when defendant knowingly and affirmatively created a dangerous situation that resulted

2   in his injury. Id. at 320. Defendant moved for summary judgment arguing (1) that his

3   actions had not created the danger which resulted in the injury and he alternatively

4   argued (2) that he was entitled to qualified immunity from suit because the unlawfulness

5   of his action was not clearly established. Id. at 320. The district court granted summary

6   judgment in favor of defendant, and plaintiff appealed.    Appellant argued inter alia, that

7   the officer's conduct had enhanced the risk that he would be harmed by a private actor.

8   Id. at 324. The court explained that a state official has no constitutional duty to protect

9   an individual from private violence, however the court reiterated that in limited

10   circumstances the Constitution does impose upon the officer an affirmative duty of care

11   and protection with respect to individuals in custody.    In these situations, the officer has

12   a constitutional duty to protect that individual from known dangers. Id. at 324.

13        Once again, the facts of the instant case clearly demonstrate that Defendant was

14   aware of the danger of drowning as he observed the decedents struggle in the river after

15   having been placed in custody. (See, First Amended Complaint ¶16, 24). Despite the

16   constitutional duty which bound Defendant to safeguard Decedents' safety and well-

17   being, he affirmatively increased the risk of their drowning by intentionally puncturing

18   the inner tubes, cutting the subject rope and thus eliminating any possible life saving

19   mechanism.

20        **B.    The Constitutional Law Pertaining to Custodial Special Duties
             and State Interference with Private Rescue Attempts Is Well**

21        **Established.**
          Although Defendant's Motion fails to address the second prong of the qualified

22   immunity analysis, Plaintiffs' nonetheless submit that the law as it pertains to custodial

23   special duties and state interference with private rescue attempts is and was well

24   established, at least within the Fifth Circuit on July 1, 2000. As explained at length

25   supra, the holdings in Saenz, Salas, and McClendon clearly set out the status of the law

26   and the parameters of an officer's duties and limitations. Defendants, including

27   ZAEHRINGER cannot dodge said requirements simply by asserting confusion as to what

28   the status of the law was.

- 13 -

1    As alleged herein and in Plaintiffs' complaint, Defendants had the decedents in
2  custody and despite this fact interfered with a private rescue attempt which was sure to
3  save their lives and failed to provide assistance despite being under a constitutional duty
4  to do so.  Defendants knew or reasonably should have known of the illegality of their
5  actions and omissions.

6                                          **VII.**
   **ALTERNATIVELY PLAINTIFFS RESPECTFULLY REQUEST THIS**
7  **COURT'S LEAVE TO AMEND THEIR COMPLAINT.**

8    Because of the lesser role pleadings play in federal litigation, there exists a strong
9  policy toward allowing amendment, provided there is no undue delay, bad faith, futility
10 of amendment or prejudice to the opposing party.  <u>Foman v. Davis</u>, 83 S.Ct. 227 (1962).

11   As analyzed above, sufficient facts exist to allege the necessary facts to plead
12 plaintiffs' causes of action for due process violations.   Should the court find merit in the
13 present defendants' arguments as to the sufficiency of the allegations in the present
14 complaint, Plaintiffs hereby request this court's leave to amend this complaint to plead
15 the appropriate constitutional amendment that was violated.

16                                         **VIII.**

17                                  **<u>CONCLUSION</u>**

18   In light of the above, Plaintiffs respectfully submit  that the present Defendant's
19 Motion to Dismiss should be denied.  To the extent that this Court is inclined to grant
20 Defendant's Motion, Plaintiffs respectfully request this Court's leave to amend their
21 Complaint.

22                                  Respectfully submitted,

23 DATED: February 25, 2004        MORENO, BECERRA, GUERRERO & CASILLAS

24
                                   BY: _____
25                                      ARNOLDO CASILLAS
                                       Attorneys for Plaintiffs
26

27

28

## DECLARATION OF ARNOLDO CASILLAS

I, ARNOLDO CASILLAS, declare as follows:

1. I am an attorney duly licensed to practice before the present court. I am a partner with the law offices of Moreno, Becerra, Guerrero & Casillas, attorneys of record for Plaintiffs herein. I have personal knowledge of the facts contained herein and if called upon to do so could and would competently testify thereto.

2. That attached to the present opposition are true and correct copies of the following exhibits:

    Exhibit 1, Declaration of Fernando Del Rio Vargas,

    Exhibit 2, Declarations of Carmelo Abundis,

    Exhibit 3, Declarations of Roberto Vargas Vargas.

    Exhibit 4, Plaintiffs Response to Request for Admission

4. That the request for admissions was submitted late out of inadvertence on the part of the declarants' related to having to find witnesses in the present case.

5. That with the present opposition, I am submitting fax copies of the declarations of Fernando Del Rio Vargas, Carmelo Vargas and Roberto Vargas Vargas. I was unable to obtain the original declarations for presentation with the present papers by the deadline for filing this opposition. I have, however, made arrangements for the originals to be delivered to me via mail and I am expecting to receive them by Monday, March 1, 2004. Upon their receipt, I will submit the original declarations to the court as a supplemental document to this opposition.

6. I declare under penalty of perjury that the foregoing is true and correct. Executed on February 25, 2004, in Montebello, California.

_____
ARNOLDO CASILLAS

1  GREGORY W. MORENO, ESQ. CA. SBN 57844
   ARNOLDO CASILLAS, ESQ., CA. SBN 158519
2  MORENO, BECERRA, GUERRERO & CASILLAS
   3500 West Beverly Boulevard
3  Montebello, CA 90640
   Tel:   (323) 725-0917
4  Fax:   (323) 725-0350

5  Attorneys for Plaintiffs
   Estate of Jose Vargas, by and through Maria
6  H. Covarrubias, Administrator and Successor in
   Interest; Ricardo Vargas, a minor, by and through
7  his guardian Maria H. Covarrubias; Maria H.
   Covarrubias; Jose G. Vargas Mendoza; Angelina
8  Valencia Morales;Estate of Guillermo Acosta Zamora,
   by and through Maria Teresa Alvarado Mendez,
9  Administrator and Successor In Interest; Maria
   Teresa Alvarado Mendez; Victor H. Acosta
10 Alvarado; Ronald Acosta Alvarado; and, Luis
   Alberto Acosta Alvarado

11

12             UNITED STATES DISTRICT COURT

13         FOR THE SOUTHERN DISTRICT OF TEXAS

14                 BROWNSVILLE DIVISION

15

16 | Estate of Jose Vargas, by and through | CASE NO: B-02-132 |
   | Maria H. Covarrubias; Administrator and |
17 | Successor in interest; Ricardo Vargas, a |
   | minor, by and through his guardian Maria |
18 | H. Covarrubias; Maria H. Covarrubias; |
   | Jose G. Vargas Mendoza; Angelina | **DECLARATION OF ROBERTO** |
19 | Valencia Morales; Estate of Guillermo | **VARGAS VARGAS** |
   | Acosta Zamora, by and through Maria |
20 | Teresa Alvarado Mendez, Administrator |
   | and Successor in Interest; Maria Teresa |
21 | Alvarado Mendez; Victor H. Acosta |
   | Alvarado; Ronald Acosta Alvarado; and, |
22 | Luis Alberto Acosta Alvarado, |

23                   Plaintiffs,

24          v.

25 Five Unknown INS/Border Patrol
   Agents; U.S. Department of Immigration
26 and Naturalization; United States Border
   Patrol; United States of America, and
27 DOE defendants 1-10, inclusive,

28                  Defendants.

EXHIBIT " _____ 1 _____ "

## DECLARATION OF ROBERTO VARGAS VARGAS

I, ROBERTO VARGAS VARGAS, declare:

1.     The matters contained in this declaration are true of my own personal knowledge, and if called upon I could testify competently thereto;

2.     I am the cousin of Decedent Jose Guadalupe Vargas, whose death is the subject of this litigation.

3.     On or about July 1, 2000, I was a member of a group of approximately thirty (30) undocumented immigrants who crossed the Rio Grande at Brownsville, Texas.

4.     I was accompanied by my cousin and decedent, Jose Guadalupe Vargas, my cousin Fernando Del Rio Vargas, and his brother-in-law, Carmelo Abundis.

5.     The instrumentality used to cross the River were large rubber inner tubes secured to a rope which spanned the entire width of the river, connecting the U.S. and Mexican river banks.

6.     In the late afternoon hours, all members of our group successfully crossed the river through the use of the referenced inner tubes.  Upon crossing the river, said inner tubes were placed on the ground at our gathering site.

7.     Once all the group members were on U.S. territory, we quickly changed into dry clothes which were carried in plastic, water resistant bags.

8.     Almost immediately after the group had changed clothes, approximately 5 White Immigration and Naturalization Service (INS) Agents suddenly appeared, yelling at us in broken Spanish ordering that we freeze and put our hands up.

9. As soon as I observed the Agents approaching, my cousin Fernando Vargas and I, ran and hid in the neighboring bushes.

10. We were positioned approximately 5 to 6 feet from where the agents were standing, and therefore could see and hear what was done and said.

11. My cousin Jose Guadalupe Vargas was among those restrained by the Agents.

12. I then observed many of the people, including my cousin, Decedent Jose Vargas, and Fernando's brother-in-law, Carmelo Abundis, jump back into the river when they saw the Agents approach.

13. Carmelo Abundis successfully reached the Mexican bank. However, my cousin Jose Guadalupe Vargas who was a poor swimmer began to struggle in the water and call for help.

14. I also observed two other men who had jumped in the river begin to struggle and yell for assistance.

15. The INS Agents simply observed in amusement doing nothing as the men struggled, drowned and yelled for help in the river. I observed one of the INS Agents laughing out loud at the drowning men's plight, then spit on the floor and yell "mother fuckers".

16. I then saw Carmelo Abundis who was on the Mexican bank, quickly grabb and begin to pull at the rope we had used to cross the river so as to force the attached inner tubes on the U.S. river bank to fall back into the river and thus allow the drowning men to grab on.

17. When one of the Agents saw that an inner tube on the ground began to move from Carmelo's tugging, the Agents immediately took out a knife and stabbed the tube numerous time so as to prevent the rescue and similarly punctured the remaining tubes. One of the Agents then grabbed hold of the rope which was connected to the inner tubes and

1   cut it as well.

2   18.   Carmelo and others on the Mexican river bank then tried throwing

3   plastic garment bags left there in hopes that the drowning men could

4   use them as floatation devices; however, this attempt was

5   unsuccessful and all three men drowned.

6   19.   The Agents never attempted to radio for assistance, nor did they ever

7   attempt to personally assist the drowning men even after they had

8   prevented rescue efforts.

9   20.   Once the men had drowned, the Agents gathered the remaining

10   immigrants and left the area.

11

12       I declare under penalty of perjury under the laws of the State of California

13   that the foregoing is true and correct.

14       Executed this 23rd day of February 2004 at Michoacan, Mexico.

15

16                           Roberto Vargas Vargas

17                           ROBERTO VARGAS VARGAS

18

19

20

21

22

23

24

25

26

27

28

1   GREGORY W. MORENO, ESQ., CA. SBN 57844
    ARNOLDO CASILLAS, ESQ., CA. SBN 158519
2   MORENO, BECERRA, GUERRERO & CASILLAS
    3500 West Beverly Boulevard
3   Montebello, CA 90640
    Tel:    (323) 725-0917
4   Fax:    (323) 725-0350

5   Attorneys for Plaintiffs
    Estate of Jose Vargas, by and through Maria
6   H. Covarrubias, Administrator and Successor in
    Interest; Ricardo Vargas, a minor, by and through
7   his guardian Maria H. Covarrubias; Maria H.
    Covarrubias; Jose G. Vargas Mendoza; Angelina
8   Valencia Morales;Estate of Guillermo Acosta Zamora,
    by and through Maria Teresa Alvarado Mendez,
9   Administrator and Successor In Interest; Maria
    Teresa Alvarado Mendez; Victor H. Acosta
10  Alvarado; Ronald Acosta Alvarado; and, Luis
    Alberto Acosta Alvarado

11

12              UNITED STATES DISTRICT COURT

13          FOR THE SOUTHERN DISTRICT OF TEXAS

14               BROWNSVILLE DIVISION

15
    Estate of Jose Vargas, by and through          CASE NO: B-02-132
16  Maria H. Covarrubias; Administrator and    )
    Successor in interest; Ricardo Vargas, a   )
17  minor, by and through his guardian Maria   )
    H. Covarrubias; Maria H. Covarrubias;      )
18  Jose G. Vargas Mendoza; Angelina           )   DECLARATION OF CARMELO
    Valencia Morales; Estate of Guillermo      )   ABUNDIS
19  Acosta Zamora, by and through Maria        )
    Teresa Alvarado Mendez, Administrator      )
20  and Successor in Interest; Maria Teresa    )
    Alvarado Mendez; Victor H. Acosta          )
21  Alvarado; Ronald Acosta Alvarado; and,     )
    Luis Alberto Acosta Alvarado,              )
22                                             )
                    Plaintiffs,                )
23                                             )
            v.                                 )
24                                             )
                                               )
25  Five Unknown INS/Border Patrol             )
    Agents; U.S. Department of Immigration     )
26  and Naturalization; United States Border   )
    Patrol; United States of America, and      )
27  DOE defendants 1-10, inclusive,            )   EXHIBIT "  2  "
                                               )
28                  Defendants.                )

## DECLARATION OF CARMELO ABUNDIS

I, CARMELO ABUNDIS, declare:

1.    The matters contained in this declaration are true of my own personal knowledge, and if called upon I could testify competently thereto;

2.    I am the brother-in-law of Fernando Del Rio Vargas whose cousin's, Decedent Jose Guadalupe Vargas, death is the subject of this litigation.

3.    On or about July 1, 2000, I was a member of a group of approximately thirty (30) undocumented immigrants who crossed the Rio Grande at Brownsville, Texas.

4.    I was accompanied by my brother-in-law Fernando Del Rio Vargas, his cousin, Roberto Vargas Vargas and Decedent, Jose Guadalupe Vargas.

5.    The instrumentality used to cross the River were large rubber inner tubes secured to a rope which spanned the entire width of the river, connecting the U.S. and Mexican river banks.

6.    In the late afternoon hours, all members of our group successfully crossed the river through the use of the referenced inner tubes. Upon crossing the river, said inner tubes were placed on the ground at our gathering site.

7.    Once all the group members were on U.S. territory, we quickly changed into dry clothes which were carried in plastic, water resistant bags.

8.    Almost immediately after the group had changed clothes, approximately 5 White Immigration and Naturalization Service (INS) Agents suddenly appeared, yelling at us in broken Spanish ordering that we freeze and put our hands up.

-2-

9. As soon as the Agents approached, my brother-in-law Fernando Vargas and his cousin Roberto Vargas, ran and hid in the neighboring bushes.

10. Upon being restrained by the Agents, I, along with many of the people in our group including Decedent Jose Vargas, jumped back into the river.

11. I was able to successfully reach the Mexican bank. Once I reached the Mexican river bank, I turned back and observed Jose Vargas who was a poor swimmer begin to struggle in the water and call for help.

12. I also observed two other men who had jumped in the river begin to struggle and yell for assistance.

13. The INS Agents simply observed in amusement doing nothing as the men struggled, drowned and yelled for help in the river.

14. Since I realized the Agents were not going to attempt a rescue of the drowning men, I immediately grabbed and began to pull at the rope we had used to cross the river so as to force the attached inner tubes on the U.S. river bank to fall back into the river and thus allow the drowning men to grab on.

15. As soon as the Agents saw that an inner tube on the ground began to move from my pulling and tugging, the Agents immediately took out a knife and stabbed the tube numerous time so as to prevent me from rescuing the drowning men. The Agents also punctured the remaining tubes. One of the Agents then grabbed hold of the rope which was connected to the inner tubes and cut it as well.

16. Had the Agents not popped the inner tubes or cut the rope, I know I would have been able to rescue the drowning men. However, since this mechanism of rescue was eliminated by the Agents, I tried throwing plastic garment bags at them which were left on the

-3-

1  Mexican bank in hopes that the drowning men could use them as a
2  floatation devices, however, this attempt was unsuccessful and all
3  three men drowned.

4  17.  I never saw the Agents attempt to radio for assistance, nor did they
5       ever attempt to personally assist the drowning men even after they
6       had prevented rescue efforts.

7  18.  Once the men had drowned, the Agents gathered the remaining
8       immigrants and left the area.

9  19.  I then proceeded down the river bank, combing the waters to see if
10      Jose Vargas' body resurfaced, however, I was unsuccessful.

11

12  I declare under penalty of perjury under the laws of the State of California
13  that the foregoing is true and correct.

14  Executed this 23rd day of February 2004 at Michoacan, Mexico.

15

16  
    CARMELO ABUNDIS
17

18

19

20

21

22

23

24

25

26

27

28

1  GREGORY W. MORENO, ESQ., CA. SBN 57844
   ARNOLDO CASILLAS, ESQ., CA. SBN 158519
2  MORENO, BECERRA, GUERRERO & CASILLAS
   3500 West Beverly Boulevard
3  Montebello, CA 90640
   Tel:   (323) 725-0917
4  Fax:   (323) 725-0350

5  Attorneys for Plaintiffs
   Estate of Jose Vargas, by and through Maria
6  H. Covarrubias, Administrator and Successor in
   Interest; Ricardo Vargas, a minor, by and through
7  his guardian Maria H. Covarrubias; Maria H.
   Covarrubias; Jose G. Vargas Mendoza; Angelina
8  Valencia Morales;Estate of Guillermo Acosta Zamora,
   by and through Maria Teresa Alvarado Mendez,
9  Administrator and Successor In Interest; Maria
   Teresa Alvarado Mendez; Victor H. Acosta
10 Alvarado; Ronald Acosta Alvarado; and, Luis
   Alberto Acosta Alvarado

11

12           UNITED STATES DISTRICT COURT

13        FOR THE SOUTHERN DISTRICT OF TEXAS

14              BROWNSVILLE DIVISION

15

16 Estate of Jose Vargas, by and through          CASE NO: B-02-132
   Maria H. Covarrubias; Administrator and )
17 Successor in interest;  Ricardo Vargas, a )
   minor, by and through his guardian Maria )
18 H. Covarrubias; Maria H. Covarrubias;     )
   Jose G. Vargas Mendoza; Angelina          )  DECLARATION OF
19 Valencia Morales; Estate of Guillermo      )  FERNANDO DEL RIO VARGAS
   Acosta Zamora, by and through Maria       )
20 Teresa Alvarado Mendez, Administrator     )
   and Successor in Interest; Maria Teresa   )
21 Alvarado Mendez; Victor H. Acosta          )
   Alvarado; Ronald Acosta Alvarado; and,    )
22 Luis Alberto Acosta Alvarado,             )

23            Plaintiffs,                    )

24       v.                                  )

25 Five Unknown INS/Border Patrol           )
   Agents; U.S. Department of Immigration    )
26 and Naturalization; United States Border  )
   Patrol; United States of America, and     )
27 DOE defendants 1-10, inclusive,          )

28           Defendants.                     )     EXHIBIT "___3___"

## DECLARATION OF FERNANDO DEL RIO VARGAS

I, FERNANDO DEL RIO VARGAS, declare:

1.     The matters contained in this declaration are true of my own personal knowledge, and if called upon I could testify competently thereto;

2.     I am the cousin of Decedent Jose Guadalupe Vargas, whose death is the subject of this litigation.

3.     On or about July 1, 2000, I was a member of a group of approximately twenty (20) undocumented immigrants who crossed the Rio Grande at Brownsville, Texas.

4.     I was accompanied by my cousin and decedent, Jose Vargas, my cousin Roberto Vargas Vargas, and my brother-in-law, Carmelo Abundis.

5.     The instrumentality used to cross the River were large rubber inner tubes secured to a rope which spanned the entire width of the river, connecting the U.S. and Mexican river banks.

6.     In the late afternoon hours, all members of our group successfully crossed the river through the use of the referenced inner tubes. Upon crossing the river, said inner tubes were placed on the ground at our gathering site.

7.     Once all the group members were on U.S. territory, we quickly changed into dry clothes which were carried in plastic, water resistant bags.

8.     Almost immediately after the group had changed clothes, approximately 5 White Immigration and Naturalization Service (INS) Agents suddenly appeared, with guns unholstered and pointed at the individuals in our group.

9.  As soon as I observed the Agents approaching, my cousin Roberto Vargas Vargas and I, ran and hid in the neighboring bushes.

10.  We were positioned approximately 5 to 6 feet from where the agents were standing, and therefore could see and hear what was done and said.

11.  My cousin Jose Guadalupe Vargas was among those restrained by the Agents threat of gunfire.

12.  I then observed many of the people, including my cousin, Decedent Jose Guadalupe Vargas, and my brother-in-law, Carmelo Abundis, jump back into the river.

13.  Carmelo Abundis successfully reached the Mexican bank. However, my cousin Jose Guadalupe Vargas who was a poor swimmer began to struggle in the water and call for help.

14.  I also observed two other men who had jumped in the river begin to struggle and yell for assistance.

15.  The INS Agents simply observed in amusement doing nothing as the men struggled, drowned and yelled for help in the river.

16.  I then saw Carmelo Abundis who was on the Mexican bank, quickly grab and begin to pull at the rope we had used to cross the river so as to force the attached inner tubes on the U.S. river bank to fall back into the river and thus allow the drowning men to grab on.

17.  When one of the Agents saw that an inner tube on the ground began to move from Carmelo's tugging, the Agents immediately took out a knife and stabbed the tube numerous time so as to prevent the rescue and similarly punctured the remaining tubes. One of the Agents then grabbed hold of the rope which was connected to the inner tubes and cut it as well.

18.  Carmelo and others on the Mexican river bank then tried throwing

- 3 -

plastic garment bags left there in hopes that the drowning men could use them as floatation devices, however, this attempt was unsuccessful and all three men drowned.

19.    The Agents never attempted to radio for assistance, nor did they ever attempt to personally assist the drowning men even after they had prevented rescue efforts.

20.    Once the men had drowned, the Agents gathered the remaining immigrants and left the area.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 23rd day of February 2004 at Michoacan, Mexico.

*Fernando del Rio-Vargas*

FERNANDO DEL RIO VARGAS

-4-

1   GREGORY W. MORENO, ESQ., SBN 57844
    ARNOLDO CASILLAS, ESQ., SBN 158519
2   MORENO, BECERRA, GUERRERO & CASILLAS
    A Professional Law Corporation
3   3500 West Beverly Boulevard
    Montebello, CA 90640-1541
4   Tel:(323) 725-0917
    Fax:(323) 725-0350
5
    Attorneys for Plaintiffs
6   Estate of Jose Vargas, by and through Maria
    H. Covarrubias, Administrator and Successor in
7   Interest; Ricardo Vargas, a minor, by and through
    his guardian Maria H. Covarrubias; Maria H.
8   Covarrubias; Jose G. Vargas Mendoza; Angelina
    Valencia Morales;Estate of Guillermo Acosta Zamora,
9   by and through Maria Teresa Alvarado Mendez,
    Administrator and Successor In Interest; Maria
10  Teresa Alvarado Mendez; Victor H. Acosta
    Alvarado; Ronald Acosta Alvarado; and, Luis
11  Alberto Acosta Alvarado

12                  **UNITED STATES DISTRICT COURT**

13              **FOR THE SOUTHERN DISTRICT OF TEXAS**

14

15  Estate of Jose Vargas, by and through Maria H.   )   **CASE NO: B-02-132**
    Covarrubias; Administrator and Successor in      )
16  interest;  Ricardo Vargas, a minor, by and       )   **PLAINTIFFS' RESPONSE TO**
    through his guardian Maria H. Covarrubias;       )   **DEFENDANT UNITED STATES OF**
17  Maria H. Covarrubias; Jose G. Vargas Mendoza;    )   **AMERICA'S REQUESTS FOR**
    Angelina Valencia Morales; Estate of Guillermo   )   **ADMISSIONS**
18  Acosta Zamora, by and through Maria Teresa       )
    Alvarado Mendez, Administrator and Successor     )
19  in Interest; Maria Teresa Alvarado Mendez;       )   **SET NO. ONE**
    Victor H. Acosta Alvarado; Ronald Acosta         )
20  Alvarado; and, Luis Alberto Acosta Alvarado,     )
                                                     )
21                  Plaintiffs,                      )
              v.                                     )
22                                                   )
    George F. Felton III, Daniel Zaehringer, Patrick )
23  B. McDermott, Two Unknown INS/Border             )
    Patrol Agents; U.S. Department of Immigration    )
24  and Naturalization; United States Border Patrol; )
    United States of America and DOE defendants 1-)
25  10, inclusive,                                   )
                  Defendants.                        )
26  _____          )

27                                      EXHIBIT "____4____"

28

                                          1
      **PLAINTIFFS' RESPONSES TO DEFENDANT UNITED STATES OF AMERICA'S**
                      **REQUESTS FOR ADMISSIONS**

| | |
|---|---|
| **PROPOUNDING PARTY:** | **DEFENDANT UNITED STATES OF AMERICA** |
| **RESPONDING PARTY:** | **PLAINTIFFS ESTATE OF JOSE VARGAS, BY AND** |
| | **THROUGH MARIA H. COVARRUBIAS, ET AL.** |
| **SET NUMBER:** | **ONE** |

Pursuant to FRCP 36, Plaintiffs ESTATE OF JOSE VARGAS, BY AND THROUGH MARIA TERESA ALVARADO MENDEZ, ET AL., hereby respond and answer Defendant UNITED STATES OF AMERICA'S Requests for Admissions:

**PRELIMINARY STATEMENT**

1  **REQUEST FOR ADMISSION NUMBER 2:**

2       The incident at issue in this lawsuit occurred at the Anacua Wildlife Refuge located near the

3  town of Santa Maria, Texas.

4  **RESPONSE TO REQUEST FOR ADMISSION NUMBER 2:**

5       Deny in part. The incident at issue in this lawsuit occurred on the bank of the Rio Grande

6  **REQUEST FOR ADMISSION NUMBER 3:**

7       Jose Vargas died on July 1, 2000.

8  **RESPONSE TO REQUEST FOR ADMISSION NUMBER 3:**

9       Deny. Jose Vargas died on June 30, 2000.

10  **REQUEST FOR ADMISSION NUMBER 4:**

11       Guillermo Acosta Zamora died on July 1, 2000.

12  **RESPONSE TO REQUEST FOR ADMISSION NUMBER 4:**

13       Deny. Guillermo Acosta Zamora died on June 30, 2000.

14  **REQUEST FOR ADMISSION NUMBER 5:**

15       Jose Vargas had not been detained by United States Border Patrol agents at anytime on July

16  1, 2000.

17  **RESPONSE TO REQUEST FOR ADMISSION NUMBER 5:**

18       Plaintiffs have undertaken a diligent search and reasonable inquiry in an effort to respond to

19       this request, but is unable to admit or deny because of lack of information. Plaintiffs believe

20       that all of the agents drew their weapons and ordered the persons they encountered on the

21       river bank to remain.

22  **REQUEST FOR ADMISSION NUMBER 6:**

23       Guillermo Acosta Zamora had not been detained by United States Border Patrol Agents at any

24  time on July 1, 2000.

25  ////

26  ////

27  ////

28  ////

**3**

**PLAINTIFFS' RESPONSES TO DEFENDANT UNITED STATES OF AMERICA'S
REQUESTS FOR ADMISSIONS**

**RESPONSE TO REQUEST FOR ADMISSION NUMBER 6:**

Plaintiffs have undertaken a diligent search and reasonable inquiry in an effort to respond to this request, but is unable to admit or deny because of lack of information. Plaintiffs believe that all of the agents drew their weapons and ordered the persons they encountered on the river bank to remain.

**REQUEST FOR ADMISSION NUMBER 7:**

None of the Border Patrol Agents present immediately before, during, or after the incident involving Jose Vargas drew their weapons on Jose Vargas.

**RESPONSE TO REQUEST FOR ADMISSION NUMBER 7:**

Deny. Plaintiffs believe that all of the agents drew their weapons and ordered the persons they encountered on the river bank to remain.

**REQUEST FOR ADMISSION NUMBER 8:**

None of the Border Patrol Agents present immediately before, during, or after the incident involving Jose Vargas drew their weapons on Guillermo Acosta Zamora.

**RESPONSE TO REQUEST FOR ADMISSION NUMBER 8:**

Deny. Plaintiffs believe that all of the agents drew their weapons and ordered the persons they encountered on the river bank to remain.

**REQUEST FOR ADMISSION NUMBER 9:**

None of the Border Patrol Agents present immediately before, during, or after the incident involving Jose Vargas drew their weapons on any of the persons detained at the scene of the drownings of Jose Vargas and Guillermo Acosta Zamora.

**RESPONSE TO REQUEST FOR ADMISSION NUMBER 9:**

Deny. Plaintiffs believe that all of the agents drew their weapons and ordered the persons they encountered on the river bank to remain.

////

////

////

////

**4**

**PLAINTIFFS' RESPONSES TO DEFENDANT UNITED STATES OF AMERICA'S
REQUESTS FOR ADMISSIONS**

1  **REQUEST FOR ADMISSION NUMBER 10:**

2      The United States, nor any of its employees or agents, did anything to prevent the possible

3  rescue of Jose Vargas.

4  **RESPONSE TO REQUEST FOR ADMISSION NUMBER 10:**

5      Deny. The border patrol agents punctured the inner tubes as persons attempted to use them

6      to save the persons who were drowning in the river.

7

8  **REQUEST FOR ADMISSION NUMBER 11:**

9      The United States, nor any of its employees or agents, did anything to prevent the possible

10  rescue of Guillermo Acosta Zamora.

11  **RESPONSE TO REQUEST FOR ADMISSION NUMBER 11:**

12      Deny. The border patrol agents punctured the inner tubes as persons attempted to use them

13      to save the persons who were drowning in the river.

14

15  DATED: August 26, 2003                    MORENO, BECERRA, GUERRERO, & CASILLAS
                                              A Professional Law Corporation
16

17
                                    By:
18                                            ARNOLDO CASILLAS
                                              Attorney for Plaintiffs,
19                                            Estate of Jose Vargas, by and through Maria
                                              H. Covarrubias, Administrator and Successor in
20                                            Interest; Ricardo Vargas, a minor, by and through
                                              his guardian Maria H. Covarrubias; Maria H.
21                                            Covarrubias; Jose G. Vargas Mendoza; Angelina
                                              Valencia Morales;Estate of Guillermo Acosta Zamora,
22                                            by and through Maria Teresa Alvarado Mendez,
                                              Administrator and Successor In Interest; Maria
23                                            Teresa Alvarado Mendez; Victor H. Acosta
                                              Alvarado; Ronald Acosta Alvarado; and, Luis
24                                            Alberto Acosta Alvarado

25

26

27

28

**5**

**PLAINTIFFS' RESPONSES TO DEFENDANT UNITED STATES OF AMERICA'S
REQUESTS FOR ADMISSIONS**

1                                **PROOF OF SERVICE**

2   STATE OF CALIFORNIA              )
                                    )        ss
3   COUNTY OF LOS ANGELES           )

4         I am employed in the County of Los Angeles, State of California. I am over the age of 18 and
    not a party to the within action; my business address is 3500 West Beverly Boulevard, Montebello,
5   California 90640-1541.

6         On August 26, 2003, I served, in the manner indicated below, the foregoing document
    described as **PLAINTIFFS ESTATE OF JORGE VARGAS, THROUGH MARIA H.**
7   **COVARRUBIAS, ET AL. RESPONSES TO DEFENDANT UNITED STATES OF**
    **AMERICA'S REQUESTS FOR ADMISSION** on the interested parties in this action by placing
8   the true copies thereof enclosed in sealed envelopes addressed as follows:

9   Nancy Masso, Esq.                        **ATTORNEYS FOR**
    Assistant U.S. Attorney                  **DEFENDANTS:**
10  600 E. Harrison Street, No. 201          United States of America
    Brownsville, TX 78520
11
                                             Telephone:(956) 548-2554
12                                           Facsimile: (956) 548-2549

13

14

15  _X_    BY REGULAR MAIL: I caused such envelopes to be deposited in the United States mail
           at Montebello, California, with postage thereon fully prepaid. I am readily familiar with
16         the firm's practice of collection and processing correspondence for mailing. It is deposited
           with the United States Postal Service each day and that practice was followed in the
17         ordinary course of business for the service herein attested to (C.C.P. § 1013(a)(3)).

18  _X_    (Federal) I declare under penalty of perjury that the oregoing is true and correct and that I
           am employed in the office of a member of the bar of this Court at whose direction the
19         service was made.

20         Executed on August 26, 2003, at Montebello, California.

21
                                             _Leah Moreno_
22                                           Leah A. Moreno

23

24

25

26

27

28

1    **CERTIFICATE OF SERVICE**

2    STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3           I am employed in the County of Los Angeles, State of California.

4           I am over the age of 18 and not a party to the within action; my business address is 3500

5    West Beverly Boulevard, Montebello, CA 90640-1541.

6           On February 24, 2004, I served the foregoing documents described as:

7    **PLAINTIFFS' OPPOSITION TO DEFENDANT DANIEL ZAEHRINGER'S
     MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND**

8    **AUTHORITIES; DECLARATIONS OF FERNANDO DEL RIO VARGAS,
     ROBERTO VARGAS VARGAS, CARMELO ABUNDIS AND ARNOLDO**

9    **CASILLAS IN SUPPORT THEREOF**

10   on the interested parties in this action by placing the true copies thereof enclosed in sealed

11   envelopes addressed as follows:

     Nancy Masso, Esq.
12   Assistant U.S. Attorney
     600 E. Harrison Street, No. 201
13   Brownsville, TX 78520

14

15

     ( )     BY FACSIMILE:  caused such document to be transmitted via facsimile to the offices of
16           the addressee(s).  (C.C.P. § 1013(a)(e)(f)).

17   ( XX ) (BY MAIL)
            I caused such envelope to be deposited in the mail at Montebello, California.  The envelope
18   was mailed with postages thereon fully prepaid.
            I am "readily familiar" with firm's practice of collection and processing correspondence for
19   mailing.  It is deposited with U.S. postal service on that same day in the ordinary course of
     business. I am aware that on motion of party served, service is presumed invalid if postal
20   cancellation date or postage meter date is more than 1 day after date of deposit for mailing in
     affidavit.
21
     ( )     BY FEDERAL EXPRESS: I caused such envelopes to be delivered by air courier, with
22           next day service, to the offices of the addressee(s). (C.C.P. §1013(c)(d)).

23
     ( )    (BY PERSONAL SERVICE)
24          I delivered such envelope by hand to the addressee.

25          Executed on February 24, 2004, at Montebello, California.

26          I declare that I am employed in the office of a member of the bar of this court at whose
     direction the service was made.

27

28          _Leah Moreno_
                                    LEAH A. MORENO