1  GREGORY W. MORENO, ESQ., SBN 57844
   ARNOLDO CASILLAS, ESQ., SBN 158519
2  MORENO, BECERRA, GUERRERO & CASILLAS
   3500 West Beverly Boulevard
3  Montebello, CA 9064
   (323) 725-0917
4
   Attorneys for Plaintiffs
5  Estate of Jose Vargas, by and through Maria
   H. Covarrubias, Administrator and Successor in
6  Interest; Ricardo Vargas, a minor, by and through
   his guardian Maria H. Covarrubias; Maria H.
7  Covarrubias; Jose G. Vargas Mendoza; Angelina
   Valencia Morales;Estate of Guillermo Acosta Zamora,
8  by and through Maria Teresa Alvarado Mendez,
   Administrator and Successor In Interest; Maria
9  Teresa Alvarado Mendez; Victor H. Acosta
   Alvarado; Ronald Acosta Alvarado; and, Luis
10 Alberto Acosta Alvarado

United States District Court
Southern District of Texas
FILED

AUG 0 9 2004

Michael N. Milby
Clerk of Court

11         **UNITED STATES DISTRICT COURT**

12       **FOR THE SOUTHERN DISTRICT OF TEXAS**

13

14 Estate of Jose Vargas, by and through Maria )    **CASE NO: B-02-132**
   H. Covarrubias; Administrator and Successor )
15 in interest;  Ricardo Vargas, a minor, by and )   Plaintiffs' Objections to the Magistrate
   through his guardian Maria H. Covarrubias; )     Judge's Report and Recommendation,
16 Maria H. Covarrubias; Jose G. Vargas )          and request to allow late responses;
   Mendoza; Angelina Valencia Morales; Estate )    declaration of Arnoldo Casillas
17 of Guillermo Acosta Zamora, by and through )
   Maria Teresa Alvarado Mendez, )
18 Administrator and Successor in Interest; )
   Maria Teresa Alvarado Mendez; Victor H. )
19 Acosta Alvarado; Ronald Acosta Alvarado; )
   and, Luis Alberto Acosta Alvarado, )

20                 Plaintiffs,                )

21         v.                                  )

22 Five Unknown INS/Border Patrol Agents; )
   U.S. Department of Immigration and )
23 Naturalization; United States Border Patrol; )
   United States of America, and DOE )
24 defendants 1-10, inclusive,                )

25                 Defendants.                 )
   _____ )
26

27         **COME NOW PLAINTIFFS** Estate of Jose Vargas, by and through Maria H.

   Covarrubias; Administrator and Successor in interest;  Ricardo Vargas, a minor, by and
28
   through his guardian Maria H. Covarrubias; Maria H. Covarrubias; Jose G. Vargas

1  Mendoza; Angelina Valencia Morales; Estate of Guillermo Acosta Zamora, by and

2  through Maria Teresa Alvarado Mendez, Administrator and Successor in Interest, Maria

3  Teresa Alvarado Mendez, Victor H. Acosta Alvarado, Ronald Acosta Alvarado, and, Luis

4  Alberto Acosta Alvarado, (hereafter collectively, "Plaintiffs") and object to the findings,

5  conclusions, rationale, inferences and determinations made by the Magistrate Judge's

6  Report and Recommendations regarding Defendants' motions for summary judgement.

7       The present objection is timely filed.  The Magistrate Judge's Report and

8  Recommendation was entered and mailed on July 21, 2004.  The present parties are

9  allowed 10 days to object.   Pursuant to Rule 6(a) and 6(e) of the Federal Rules of Civil

10  Procedure, Saturdays and Sundays are excluded and three days are added because the

11  Judge's Report and Recommendation was served by mail.   The Recommendation and

12  Report was served on Plaintiffs' counsel by mail and was not faxed to the office of

13  Plaintiffs' Counsel.  Accordingly, Plaintiffs have until August 7, 2004, and plaintiffs'

14  counsel confirmed the deadline with the Clerk's office.  Decl. of Arnoldo Casillas; see

15  also, Lero v. Quaker Oats Company, 84 F.3d 239 (7th Cir. 1996).

16                              **INTRODUCTION**

17       The Report and Recommendation recognizes that there exist triable issues of fact

18  regarding Plaintiffs' claim for the violation of the Fifth Amendment rights of Plaintiffs'

19  decedents.  But for the conclusions regarding the admissions which are recommended to

20  be deemed admitted, this case would proceed to trial on at least the Fifth Amendment

21  claim.  As is requested herein, the court should exercise its discretion to allow Plaintiffs'

22  late responses to the requests for admissions.  No meaningful prejudice has been suffered

23  by the Defendants as a result of the nine-day delay in serving them.  Plaintiffs note that

24  they have also filed a motion to withdraw or amend the admissions.

25  ////

26  ////

27  ////

28  ////

# OBJECTIONS

Plaintiffs present their objections to each of the sections of the Magistrate Judge's report and Recommendation as follows:

## SECTION I:  BACKGROUND

Recitation of Plaintiffs factual summary incomplete.

Plaintiffs object to the limited and incomplete recitation of the facts underlying plaintiffs claims which is presented in this section.   Plaintiffs incorporate here by reference the statement of facts from their oppositions to the motions to dismiss/summary judgement and note that the Report and Recommendation provides an incomplete and partial summary of the facts in support of Plaintiffs' opposition.

## SECTION II: CLAIMS AND PARTIES

B.    Fourth and Fifth Amendment

Plaintiff objects to the conclusion made in the Report and Recommendation that "[i]t appears that plaintiffs have presented arguments which are clearly outside the scope of their complaint.  Plaintiffs allege causes of action under constitutional amendments, but arbitrarily refer to various other federal and state statutory provisions which are not apposite given the alleged facts."

This conclusion does not indicate which arguments are outside the scope of the complaint.  The conclusion does not indicate which federal and state statutory provisions which the Court has determined not to be apposite given the alleged facts.

Plaintiffs submit that they have properly relied on the Fourth and Fifth Amendments as well as the authority under Bivens to present their claims.

Plaintiffs also object to the conclusion that they have not presented a valid claim under the Fourth Amendment.  Whenever an officer restrains the freedom of a person to walk away, he has seized that person.  Tennessee v. Garner, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1, 53(1985).  While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth

1   Amendment.  Plaintiffs both plead and presented facts to support their claim that

2   Plaintiffs' decedent were detained by the defendant officers.  The Report and

3   Recommendation indicates that there are triable issues of fact with respect to the

4   detention.    Clearly, there are; the declarations of the eye witnesses create these triable

5   issues.  Plaintiffs' First Amended Complaint states that the Defendants took control of the

6   inner-tubes and punctured them to prevent the decedents' escape.  Clearly, the Defendants

7   used force in their attempt to prevent the escape, making them subject to reasonableness

8   requirements of the Fourth Amendment.  Triable issues of fact remain as to whether their

9   use of force was reasonable.

10  **III. DEEMED ADMISSIONS:**

11          Plaintiffs object to the conclusion, as well as the supporting agreements in the

12  Recommendation and Report that the matters at issue in defendants' request for

13  admissions should be deemed admitted.

14          This case involves the tragic drowning deaths of Plaintiffs' decedents Jose

15  Guadalupe Vargas and Guillermo Acosta.  Plaintiffs have alleged substantive and

16  procedural due process rights violations under the fourth, fifth and fourteenth

17  amendments against Defendants, including defendant UNITED STATES OF AMERICA

18  and defendant agents GEORGE F. FELTON III, DANIEL ZAEHRINGER and

19  PATRICK B. MCDERMOTT, for said agents' actions and failures to act causing the

20  death of Plaintiffs' decedents, thus making defendants liable for such deaths.

21          On July 15, 2003, defendant UNITED STATES OF AMERICA served its first set

22  of Requests for Admissions on Plaintiffs.  On August 26, 2003, nine (9) days after the

23  thirty day limit as set forth in Fed.R.Civ.P. 36(a), Plaintiffs filed their Response  Plaintiffs

24  later became aware that, according to Fed.R.Civ.P. 36 (a), a failure to respond to requests

25  for admissions in a timely fashion may deem the matters contained therein admitted.

26  Plaintiffs submit that matters at issue should not be deemed admitted or that they should

27  be permitted to withdraw them.

28  ////

-4- 119

1    Plaintiffs originally filed their complaint in this action on or about June 27, 2002.

2    At the time, Plaintiffs had not determined the true names and identities of the particular

3    INS/Border Patrol Agents that were involved in the incident.  Therefore, Plaintiffs

4    fictitiously named "Five Unknown INS/Border Patrol Agents" in the complaint among

5    other defendants whom Plaintiffs believed the unknown agent defendants to be working

6    for at the time of the incident, including defendants United States of America, U.S.

7    Department of Immigration and Naturalization and United States Border Patrol.  Plaintiffs

8    intended on amending the complaint to add the true names of the unknown agents

9    involved upon learning their identities through further investigation, discovery and/or

10   communication with counsel for Defendants.

11   Sometime thereafter, through the disclosure of documents by Defendants,

12   Plaintiffs learned of the true names and identities of three of the unknown agents

13   fictitiously named in the complaint as defendants.  Based on such knowledge, Plaintiffs'

14   counsel spoke with Defendants' counsel, Assistant U.S. Attorney, Nancy Masso,

15   regarding a stipulation to amend the complaint to include the names of "newly learned"

16   federal agents involved in the incident.  See Declaration of Arnoldo Casillas.

17   On or about January 31, 2003, Plaintiffs' counsel then sent a letter to Ms. Masso

18   regarding amending the complaint.  In the letter, Plaintiffs' counsel indicated to Ms.

19   Masso that the amended complaint now contained the names of the three Border Patrol

20   agents whom they both agreed were present and somehow involved in the subject

21   drowning incident.  Counsel's letter requested that Ms. Masso review each of the

22   documents he had forwarded to her, including the amended complaint, for any changes

23   that should be made.  In the alternative, if no changes were necessary, and the documents

24   met with her approval, counsel's letter requested that Ms. Masso file the originals upon

25   receiving them from Plaintiffs' counsel via overnight delivery.

26   Defendants' counsel never communicated to Plaintiffs' counsel any problems with

27   the mentioned documents or that any changes were necessary.  Therefore, on or about

28   February 13, 2003, Plaintiffs amended complaint was filed, adding the names of

1 defendant INS/Border Patrol agents George F. Felton III, Daniel Zaehringer and Patrick

2 B. McDermott.

3      As a result of the filing of Plaintiffs' amended complaint, and Plaintiffs' service of

4 the same on all parties, the pertinent facts, parties involved and allegations of this case

5 became clearly established and known to all parties involved. "Facts Common To All

6 Actions," contained in First Amended Complaint.  The allegations have since been

7 sufficiently supported by the declarations of three percipient witnesses – Fernando Del

8 Rio Vargas, Carmelo Abundis and Roberto Vargas Vargas – whose declarations were

9 submitted as part of Plaintiffs' oppositions to the underlying motions.

10      As is relevant here, the Request for Admissions at issue propounded by defendant

11 United States of America went to the core of the allegations of Plaintiffs' complaint.

12 Specifically, the admissions that were sought (i.e. whether the decedents were in the

13 custody of Defendants, whether the Defendants ever unholstered and drew their weapons,

14 and whether the Defendants prevented a rescue) are crucial to the determination of the

15 merits of Plaintiffs' case, and constitute central facts in dispute.

16 ////

17      These Requests were not questions that Plaintiffs could readily answer since the

18 Plaintiffs' are heirs and not percipient to the events that occurred at the time of the deaths.

19 Plaintiffs' answering these Requests nine (9) days late was not deliberate, but rather

20 resulted from excusable inadvertence on the part of Plaintiffs' counsel who was still in the

21 process of locating witnesses at the time the responses to the requests came due.

22      Defendants were not possibly prejudiced by Plaintiffs' late responses to the

23 requests for admissions at issue.  Defendants knew of Plaintiffs' allegations that the

24 conduct of the named the defendant agents involved, in assuming custody of the

25 decedents by pointing their guns at them and then cutting off the escape for such

26 misdemeanor aliens, did not justify their failure to allow rescue attempts.  That was and

27 has always been the essence of the complaint.  Through the amendment to the complaint,

28 Plaintiffs made known which particular defendant agents were involved.  The allegations

1  in the amended complaint specifically set out the allegations regarding the conduct of

2  defendants, and Defendants were always aware of these contentions.

3       As the moving papers admit, Defendants are the agents involved in the incident.

4  The moving papers also admit that they have always had the correct date and location of

5  the actual incident and parties involved based on their own information as well as the

6  facts and allegations set forth in Plaintiffs' complaint.  Declaration of Patrick B.

7  McDermott at ¶ 3, Decl. of Daniel Zaehringer at ¶ 3, and Decl. of George F. Felton III at ¶

8  3.  Based on the complaint, and on Defendants' ability to identify therefrom the

9  defendant agents involved, defendants have always been in a position to refute any of

10  Plaintiffs' allegations.

11       The identified defendants were actually at the scene at the time the subject incident

12  occurred.  Thus, unlike Plaintiffs, Defendants have always been better situated to

13  determine the exact date and location of the deaths at issue, as well as the identities of any

14  percipient witnesses, or of any evidence, that may exist.  Presently, there is no new

15  evidence that Defendants must now somehow attempt to refute.  There is no confusion

16  voiced by Defendants in their moving papers.  Simply, as they admit, they know that they

17  are the agents that contacted Plaintiffs' decedents, and that they are the agents that are

18  identified as being involved in the incident which lead to the drowning of Plaintiffs'

19  decedent.  Contrary to the suggestion of the Report and Recommendation, the

20  Defendants do not contend have confused this incident with any other drowning.

21       If the admissions are deemed admitted, Plaintiffs will be denied a jury

22  determination of whether or not the defendant agents in fact denied the rescue attempts in

23  these tragic drowning deaths of Plaintiffs' decedents. The Defendants could not have

24  truly believed that the Plaintiffs would admit the untruthfulness of their core allegations.

25  Plaintiffs should not now be denied their day in Court based upon a nine-day delay in

26  submitting their Response to Requests for Admissions.  This nine-day delay could not

27  have prejudiced the Defendants in their preparation of their defense.

28

122

1  **a.    The matters should not be deemed admitted**

2      Fed.R.Civ.P. 36 (a) provides in pertinent part that matters set forth in a written

3  request for admissions will be admitted unless, within 30 days after service of the request,

4  or within such shorter or longer time as the court may allow or as the parties may agree to

5  in writing, subject to Rule 29, the party to whom the request is directed serves upon the

6  party requesting the admission a written answer or objection addressed to the matter.

7      Fed.R.Civ.P. 36 (a) further provides:

8          "If the court determines that an answer does not comply with the

9          requirements of this rule, it may order either that the matter is admitted or

10          that an amended answer be served."

11      Fed.R.Civ.P. 36 (b) provides in pertinent part:

12      (b)    "Any matter admitted under this rule is conclusively established unless the

13          court on motion permits withdrawal or amendment of the admission.

14          Subject to the provision of Rule 16 governing amendment of a pre-trial

15          order, the court may permit withdrawal or amendment when the

16          presentation of the merits of the action will be subserved thereby and the

17          party who obtained the admission fails to satisfy the court that withdrawal

18          or amendment will prejudice that party in maintaining the action or defense

19          on the merits.

20      As is relevant to this case, the Court of Appeals in In re Carney, (2001, 5th Cir.)

21  258 F.3d 415 stated in its ruling: "Since Rule 36 admissions, whether express or by

22  default, are conclusive as to the matters admitted, they cannot be overcome at the

23  summary judgement stage by contradictory affidavit testimony or other evidence in the

24  summary judgment record.  Instead, the proper course for a litigant that wishes to avoid

25  the consequences of failing to timely respond to Rule 36 requests for admission is to

26  move the court to amend or withdraw the default admissions in accordance with the

27  standard outlined in Rule 36 (b).  Id., at 420.  See also, Perez v. Miami-Dade County,

28  (11th Cir. 2002) 297 F.3d 1255, 1265 (*a district court abuses its discretion in denying a*

123

1 | *motion to withdraw or amend when it applies some other criteria beyond the two-part test*

2 | *– or grossly misapplies the two-part test – in making its ruling).*

3      The court should take opportunity to find that there has been no prejudice to

4 Defendants as a result of the service of the responses only nine days after their due date.

5 No meaningful prejudice was suffered.   The court should exercise its discretion to allow

6 the late responses.   To permit a late response to requests for admissions is, of course,

7 discretionary with the court. <u>United States v. Lake Killarney Apartments</u>, 443 F. 2d 1170

8 (5th Cir. 1971); <u>French v. United States</u>, 416 F. 2d 1149 (9th Cir. 1969). And, it would

9 appear that if the other party would not be prejudiced, discretion should be exercised in

10 favor of allowing late responses. <u>Moosman v. Joseph P. Blitz, Inc.</u>, 358 F. 2d 686 (2nd

11 Cir. 1966).

12      Because of the absence of meaningful prejudice to the defendants due to the nine

13 day delay, Plaintiffs request that the court allow their late responses and not deem them

14 admitted.

15 ////

16 ////

17 **b. The presentation of the merits of plaintiffs' case will be subserved if withdrawal**

18 **or amendment of the subject admissions is not permitted.**

19      The law on Rule 36 (a) is quite clear when deemed admissions involve facts

20 central to the case, and therefore determine its merits.   In <u>Pickens v. Equitable Life</u>

21 <u>Assurance Society of the United States</u>, 413 F. 2d 1390 (1969), the court made clear that

22 Requests for Admissions as to central facts in dispute have consistently been held

23 improper and are beyond the scope of the rule providing that requested admissions shall

24 be deemed admitted if not answered.   In <u>Pickens</u>, the issue of suicide was crucial to a

25 determination of the case, and the court held that the plaintiff's failure to reply to the

26 request did not fall within the ambit of Rule 36 (a) and did not constitute an admission of

27 suicide. <u>Pickens</u>, 413 F. 2d at 1393. <u>See also</u>, <u>Rohman v. Chemical Leaman Tank Lines</u>,

28 (S.D.N.Y. 1996) 923 F.Supp 42, 46 (*holding that although party failed to respond and*

1   *failed to provide an explanation for not responding to a request for admission, the subject*
2   *of the request was too important to the merits of the case not to be presented*).

3   In <u>Kosta v. Connolly</u>, (1989) 709 F.Supp. 592, the district court found it
4   appropriate and necessary to permit withdrawal of a plaintiff's default admissions under
5   Rule 36 (b) based on the fact that the admissions were central to the plaintiff's case. The
6   court in that case made clear the purpose of Rule 36 (a):

7   "The purpose of F.R.Civ.P 36 (a) is to expedite trial by eliminating the necessity of
8   proving undisputed and peripheral issues. We should not employ the rule to
9   establish facts which are obviously in dispute or to answer questions of law. In the
10  case at bar, the question whether the plaintiffs violated the statute is neither
11  undisputed nor peripheral. The plaintiffs not only contested their guilt throughout
12  the state proceedings, but they also prevailed on appeal. Moreover, the question of
13  plaintiffs' guilt is central to this case. If plaintiffs admitted to violating the statute,
14  they would effectively resolve the disputed issues . . . . Clearly, that is not the
15  plaintiffs' position, and Rule 36 is not intended to make it so." <u>Id</u>., at 594-595.

16  In a similar appellate court decision finding that the district court abused its
17  discretion in not permitting a party's withdrawal or amendment of default admissions, the
18  appellate court, in its analysis of Rule 36 (b)'s two-part test, emphasized the importance
19  of having an action resolved on the merits and distinguished cases in which a request for
20  admissions and Rule 36 (a) function <u>improperly</u>:

21  "We conclude with a comment on Rule 36 and Perez's use of requests for
22  admissions in this case. Essentially, Rule 36 is a time-saver, designed 'to expedite
23  the trial and to relieve the parties of the cost of proving *facts that will not be*
24  *disputed at trial*.' That is, when a party uses the rule to establish uncontested facts
25  and to narrow the issues for trial, then the rule functions properly. When a party
26  like Perez, however, uses the rule to harass the other side or, as in this case, with
27  the wild-eyed hope that the other side will fail to answer and therefore admit
28  essential elements (that the party has already denied in its answer), the rule's time-

- 10 -

125

1    saving function ceases; the rule instead becomes a weapon, dragging out the

2    litigation and wasting valuable resources." <u>Perez v. Miami-Dade County</u>, (2002,

3    Eleventh Cir.) 297 F.3d 1255, 1268.

4        Here, as in the above-referenced cases, the admissions at issue, requested in

5    Defendants' July 15, 2003 Request for Admissions, clearly go to the core of Plaintiffs'

6    case. Those requests sought admissions to central facts alleged in Plaintiffs' complaint:

7    particularly, whether the decedents were in the custody of Defendants at the time this

8    incident occurred, whether the Defendants unholstered and drew their weapons, and

9    whether the Defendants prevented a rescue. These central facts go to the core of

10   Defendants' liability for the deaths of Plaintiffs' decedents. As such, as characterized in

11   <u>Perez</u>, those requests could only be meant to harass Plaintiffs, with the wild-eyed hope

12   that they would fail to answer and therefore admit essential elements of their case.

13   Clearly, Plaintiffs' instant request falls within the ambit of relief provided for under

14   Fed.R.Civ.P. 36 (b).

15       The above established federal case law is directly on point. That law makes clear

16   that the discretion afforded to a court under subsection (b) of Rule 36 was promulgated

17   precisely for instances such as the present, where there was <u>only</u> a nine-day delay in

18   service of the Responses caused by Plaintiffs' counsel's excusable inadvertence, and the

19   merits of Plaintiff's action will not only be subserved, but will be obliterated as the issue

20   of Defendants' liability will be effectively decided should relief not be granted. The

21   applicable case law warrants and necessitates permitting Plaintiffs to withdraw or amend

22   the subject admissions to preserve the presentation of their case on the merits. To find

23   otherwise would be grossly unjust.

24   **c.**    **Defendants have not shown and cannot show that withdrawal of the subject**

25       **admissions will in any way prejudice them in maintaining their defense on**

26       **the merits.**

27       Defendants have not shown, and cannot show, that the Court's permitting

28   withdrawal of the subject default admissions will in any way prejudice them in

126

1  maintaining their defense of this case.

2      Under subsection (b) of Fed.R.Civ.P. 36, it is Defendants' burden to convince the

3  Court that it will be prejudiced by the withdrawal.  <u>Fed.R.Civ.P.</u> 36 (b); <u>See generally,</u>

4  <u>Pickens,</u> supra; <u>ADM Agri-Industries, Ltd. v. Harvey,</u> (M.D.Ala.2001) 200 F.R.D 467.

5      Applicable federal case law has made clear that the prejudice Defendants must

6  show must be significantly greater than that merely without the admissions, Defendants

7  will have to move forward with their defense of this case on the merits and/or will be

8  unable to escape liability based on a trivial discovery technicality.  Specifically, in

9  describing the prejudice that must be shown, the court in <u>Harvey</u> stated: "This prejudice

10  is not, of course, the simple fact that ADM's case is worse off without the admissions.

11  The prejudice contemplated by the Rule is not simply that the party who initially obtained

12  the admission will now have to convince the fact finder of its truth.  Rather, it relates to

13  the difficulty a party may face in proving its case, *e.g.,* caused by the <u>unavailability of key</u>

14  <u>witnesses, because of the sudden need to obtain evidence with respect to the questions</u>

15  <u>previously answered by the admissions</u>.  Thus, ADM's burden is to show it will unfairly

16  face proof problems related to the process of having and then losing the admissions."

17  <u>Harvey,</u> at 471. (Emphasis added.)  <u>See also,</u> <u>Perez,</u> supra at 1266-1267; <u>Gallegos v. City</u>

18  <u>of Los Angeles,</u> (9th Cir. 2002) 308 F.3d 987, 993; <u>Sonada v. Cabrera,</u> (9th Cir. 2001) 255

19  F.3d 1035, 1039.

20      In <u>Perez,</u> the appellate court found the arguments of the plaintiff (who carried the

21  burden of proving prejudice there) unconvincing where he asserted that he had relied

22  upon the default admissions in his preparation for trial, but where the defendants in

23  denying the allegations of the complaint (which mirrored the bulk of the admissions),

24  maintained from the beginning that they would contest plaintiff's core allegations.  The

25  court in <u>Perez</u> also found significant that prior to the issue of the default admissions

26  arising, defendants had also provided several statements in documents other than their

27  answer which contested the plaintiff's allegations.  <u>See,</u> <u>Perez,</u> supra at 1267.

28      On the contrary, the court in <u>Harvey</u> found that the plaintiff had met its burden of

- 12 -

1  proving prejudice.  However, there, unlike in this case, the court held that the past

2  discovery non-compliance of the defendant was so egregious that the plaintiff would be

3  unduly prejudiced without the admissions because without their deterrent value, it would

4  face a heightened and unfair risk of having to prosecute its case without knowing if the

5  defendant would comply with any further discovery requests.  Harvey, supra at 471-472.

6  The court found that the uncertainty and delay caused by the defendant's actions

7  prevented the plaintiff from knowing for sure whether its prima-facie case would be

8  contested.  Id.  Importantly, the defendant in that case had failed to reply to repeated

9  requests for admissions and discovery, had never given the court any plausible

10  explanation for its discovery noncompliance, and had even evinced a willingness to

11  ignore a direct order from the Magistrate Judge concerning compliance to the discovery.

12  Id.

13       Here, Plaintiffs answered the Request for Admissions at issue, albeit nine days

14  late.  No discovery orders were ever issued by the Court with respect to those requests, or

15  for any other discovery requests for that matter.  At no time other than in Defendants'

16  recent motion to dismiss the complaint, filed approximately seven (7) months after the

17  subject Request for Admissions were served on Plaintiffs, and approximately six (6)

18  months after Plaintiffs' served their Responses, have Defendants ever communicated to

19  Plaintiffs that there was a problem with respect to Plaintiffs' Response, or, that they had

20  not received Plaintiffs' Response, as they so alleged in their referenced motion to dismiss

21  the complaint.

22       In addition, subsequent to Defendants having indicated to Plaintiffs which agents

23  they agreed to be involved in the subject incident for purposes of Plaintiffs amending

24  their complaint, as referenced earlier, Defendants never communicated to Plaintiffs any

25  "uncertainty" as to Plaintiffs' prima-facie case, or the facts or parties involved.  Plaintiffs

26  have never attempted to mislead or confuse the defense to their prejudice in the

27  prosecution of this case.  As proof of their desire to be on all four corners with

28  Defendants, Plaintiffs actually submitted to the Defense counsel a copy of the amended

- 13 -

128

1  complaint before it was filed so that they could review it and make any suggestions

2  regarding its propriety. Only after it was reviewed by Defense counsel was it filed.

3      None of Plaintiffs' actions serve to prejudice or confuse the defense of this action.

4  Had Defendants communicated any such uncertainties with the amended complaint, or a

5  problem with Plaintiffs' Response to their subject Request for Admission, such as their

6  non-receipt of the Responses, Plaintiffs could have immediately made efforts to clear up

7  any such ambiguities, or simply forwarded Defendants another copy of their Response.

8      Notwithstanding Defendants' claim that they never received the Responses,

9  Plaintiffs maintained in the Responses served that each central fact contained therein had

10  occurred as alleged in their complaint.  Because the admissions requested went to

11  Plaintiffs' core allegations of the complaint, Defendants cannot now realistically claim

12  that they expected any different answers from Plaintiffs in their Response to the Request

13  for Admissions.  Defendants have also always known that Plaintiffs' were contending that

14  decedents were in the custody of Defendants at the time of the incident, that said custody

15  was effectuated on decedents through the defendant agents having unholstered their

16  weapons and pointed them at decedents, ordering them to freeze and put up their hands,

17  and, that upon the decedents reentering the river, said defendants prevented their rescue.

18      Thus, not only were Defendants' subject Request for Admissions improper as

19  established by the above-referenced case law, but said Request did nothing to enhance

20  Defendants' knowledge of the facts in this case, or assist in their preparation of a defense.

21  It is unequivocal that the central issues contained in Defendants' Request for Admissions

22  have always been in dispute between the parties and were not going to be resolved

23  through admissions.

24      More importantly, however, regardless of the untimeliness of the service of the

25  Responses, or Defendants' claim that they never received them, Defendants have always

26  been informed, at least since the filing of Plaintiffs' amended complaint, who the parties

27  involved in this case are and what Plaintiffs' contentions are.  Dispositively, in the

28  declarations of the defendant agents, which Defendants attached to their motion to

129

1   dismiss, Defendants even admit to having always known the date and location of the

2   subject incident and which defendant agents were involved based on the names of

3   Plaintiffs' decedents as indicated in their original complaint.

4          As such, Defendants cannot assert in good faith that they will suffer any prejudice

5   whatsoever, aside from having to proceed with this case on the merits, should this court

6   grant the instant request. Therefore, the Court should grant the instant request to allow

7   their late responses and not deem them admitted so they may proceed with their case on

8   the merits.

9   **d.      This case to be decided on the merits since plaintiffs' untimely response to the**

10          **underlying requests for admissions was the result of counsel's excusable**

11          **inadvertence.**

12         This request should be granted to allow final disposition of this case to be decided

13   on the merits rather than on mere, relatively minor, discovery noncompliance.

14         Applicable case law makes clear that courts generally disfavor final disposition of

15   a case based merely on discovery noncompliance; and normally, changed circumstances

16   or honest error will be valid grounds to grant a request to withdraw or amend under Rule

17   36 (b):

18         "Both the case law and the Advisory Committee Note to Rule 36 suggest that the

19   courts should be reluctant to deny motions to withdraw or amend when final disposition

20   of the case may result from mere discovery noncompliance rather than the merits."

21   Harvey, supra at 471.  *See*, e.g. Smith v. First National, (1988, Eleventh Cir.) 837 F.2d

22   1575, 1577 ("*It would be manifestly unfair and grossly unjust to permit plaintiff to obtain*

23   *a judgment of the magnitude she is seeking due to the inadvertence of the defendant*

24   *which is at most excusable neglect.*").

25         "In a proper case . . . such as when an admission has been made inadvertently,

26   Rule 36 (b) might well require the district court to permit withdrawal."  Harvey, supra at

27   471.

28         In addition, in a case very similar to the present, an appellate court upheld the trial

- 15 -                    130

1    court's decision to excuse a party's one-day late filing of its response to a request for

2    admissions, holding: "Accordingly, the district court was left to consider whether CNA's

3    response was permissibly filed one day late based upon the circumstances.  Because the

4    late response was so minimal in time and work on the date for responding was slowed by

5    the snow storm, we conclude that the district court did not abuse its discretion in refusing

6    to consider the requests for admissions as admitted."  Nguyen v. CNA Corporation,

7    (1995, Fourth Cir.) 44 F.3d 234, 243.

8        As in Nguyen, Plaintiffs' Response to the underlying Requests for Admissions

9    here was filed/served only nine days late.  While Plaintiffs do not wish to indulge the

10   Court in a barrage of excuses in an attempt to justify their late filing, Plaintiffs would like

11   to candidly inform the Court that the late filing was the result of inadvertence on the part

12   of Plaintiffs' counsel, or at most "excusable neglect", as counsel had still been in the

13   process of tracking down witnesses involved in this case at the time the Response came

14   due.  As the Court is aware, none of the plaintiffs in this case were percipient witnesses,

15   and tracking down percipient witnesses has been a difficult task based on the facts and

16   circumstances of this case.  By no means was the untimely Response deliberate or meant

17   to somehow prejudice Defendants, or to communicate an unwillingness on Plaintiffs' part

18   to comply with discovery or cooperate with Defendants in this case.

19       Plaintiffs should not now have their case decided based on what essentially

20   amounts to a very minor noncompliance to discovery.  As illustrated above, Defendants

21   have not been, nor will be, prejudiced by Plaintiffs' nine-day late Response or by the

22   Court's granting Plaintiffs permission to withdraw the default admissions.  Therefore, in

23   the utmost interest of justice, and as is consistent with applicable federal case law relating

24   to Rule 36, the Court should  grant Plaintiffs' instant request so that Plaintiffs will be

25   allowed to proceed with having their case determined on the merits.

26       Based on the above, and in the upmost interest of justice, Plaintiffs respectfully

27   request that the Court grant the instant request to allow Plaintiffs' late responses and not

28   deem them admitted.  Because of the absence of meaningful prejudice to the defendants

131

1   due to the nine day delay, Plaintiffs request that the court allow their late responses and

2   not deem them admitted.

3

4   **V. HEIGHTENED PLEADING REQUIREMENT**

5          Plaintiffs object to the conclusion that they have not sufficiently plead their causes

6   of action, either under the generic pleading requirement or the heightened pleading

7   requirement.   Even under the more stringent standard, plaintiffs have plead the necessary

8   facts to support their claims.

9          In order to state a cause of action under the heightened pleading requirement for a

10  Bivens action, a plaintiff must identify defendants who were either personally involved in

11  the constitutional violation or whose acts are causally connected to the constitutional

12  violation alleged.  Anderson v. Pasadena Independent School District, 184 F3d. 439, 443.

13         In the present case, Plaintiffs' complaint identifies the particular individual

14  defendants and then attributes specific acts to them with respect to the defendants

15  observing the activities of the persons crossing the river, the arrival of Plaintiffs'

16  decedents on the US bank of the river, defendant agents' drawing of their weapons and

17  detention of the Plaintiffs' decedents, the taking of Plaintiffs' decedents' into custody, the

18  making of observations regarding the struggling of the decedents in the river, the cutting

19  of the rope strung across the river and the puncturing of the inner tubes.   See, First

20  Amended Complaint at ¶¶9-16, 24-26.

21         These specific allegations regarding the defendants put them on clear notice of the

22  specific acts and omissions upon which Plaintiffs rely on in their complaint for purposes

23  of making out constitutional violations.  Moreover, these allegations are far from the short

24  and plain statement of the claim that will give the defendant fair notice of what the

25  plaintiff's claim is and the grounds upon which it rests that FRCP 8 requires.

26         Plaintiffs have sufficiently plead a constitutional violation on behalf of the

27  decedents.  Moreover, as the Report and Recommendation recognizes, the supporting

28  evidence presented by Plaintiffs has raised triable issues of fact as to these claims.

- 17 -

132

# VI.   STANDARD OF REVIEW

## A.   Rule 12(b)(6).

Plaintiffs object to the court not adhering to the standard of review that the court must liberally construe the complaint in favor of the plaintiff and assume the truth of all well-pleaded facts, and that the court may not dismiss a plaintiff's action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Here, as presented above, plaintiffs respectfully submit that they have presented sufficiently specific allegations with respect to each of the defendants to show that they undertook specific acts so as to present a sufficient case for the violation of the decedent's constitutional rights.   The facts presented in paragraphs 9 through 16 and 24 through 26, for example, establish very particularized conduct on behalf of the defendants.

Plaintiffs object to the apparent conclusion in the Report and Recommendation that Plaintiffs' allegations are masquerading as factual assertions.  The court does not point to any allegation in Plaintiffs' complaint that is conclusory or which amounts to a legal conclusion.

Ultimately, the Report and Recommendation does not address the question of the request to amend the pleadings.  Given that the defendants did not challenge the sufficiency of the pleadings until late in the proceedings, they should not be allowed now to suggest that they were not given sufficient notice of the specific nature of the claims and supporting facts against them.   This is especially true when taking into account that the court is to liberally give leave to amend ( <u>Foman v. Davis</u>, 83 S.Ct. 227 (1962)), and given that the essential issues and factual disputes to be presented at trial would have been submitted in the proposed pre-trial order prepared by the parties.

////

////

////

133

## VII: DECEDENT'S RIGHTS UNDER THE CONSTITUTION

The Report and Recommendation admits that there are material issues of fact with respect to whether decedents reached U.S. soil and were subsequently detained.  P. 17.

Plaintiffs object, however, to the conclusion that to survive a motion to dismiss the Fifth Amendment claim, Plaintiffs' decedents would have to have been detained and taken into custody by defendants.   The substantive due process right to protective services exists when an affirmative exercise of power limits their ability to care for themselves.  Salas v. Carpenter, 980 F. 2d 299, 308 (5th Cir. 1992).   A constitutional duty to protect an individual exists in a non-custodial setting if a federal agent has taken affirmative action to increase the individual's danger of, or vulnerability to such danger beyond the level that person would have been in absent the actions of the federal agent. Salas, 980 F. 2d at 308.  Moreover, even if no custody were alleged or found, Defendant was still required to provide assistance to decedents since by puncturing the inner tubes and severing the subject rope, the agents effectively increased decedents' vulnerability to danger beyond the level it would have been absent their action and left decedents in a worse position than they would have been had the Agents not gotten involved.   The Report and Recommendation admits that absent the admissions, triable issues of material facts exist as to whether Plaintiffs' decedents were detained and whether Defendants prevented their rescue.

## VIII: RECOMMENDATIONS:

Plaintiffs herein incorporate the above and object to the recommendations.  As noted above Plaintiffs' have sufficiently plead a Fourth Amendment claim.  Even under the heightened pleading standard, the complaint very specifically presents the facts underlying Plaintiffs claims. There is no confusion as to what specific actions Plaintiffs contend the defendant agents undertook to cause the death of Plaintiffs' decedents. The declarations submitted with the opposition to the motion support a conclusion that there are triable issues of fact regarding whether it was reasonable for the defendant agents to ////

134

1   use the force that they did to prevent the escape of Plaintiffs' decedents.   The Fourth

2   Amendment Claim should not be dismissed.

3   Plaintiffs object to the recommendation regarding Plaintiffs' causes of action for

4   violation of the Fifth Amendment rights of Plaintiffs' decedents.  As presented above, the

5   nine-day delay in presenting the responses did not prejudice the defendants in any

6   meaningful way.  The court should exercise its discretion to allow their late responses and

7   not deem them admitted.  As the Report and Recommendation notes, triable questions of

8   fact have been raised by Plaintiffs.   The motions to dismiss and motions for summary

9   judgement should be denied.

10                              **CONCLUSION**

11  The Report and Recommendation recognizes that there exist triable issues of fact

12  regarding Plaintiffs' claim for the violation of the Fifth Amendment rights of Plaintiffs'

13  decedents.  But for the conclusions regarding the admissions which are recommended to

14  be deemed admitted, this case would proceed to trial on at least the Fifth Amendment

15  claim.  As is requested herein, the court should exercise its discretion to allow Plaintiffs'

16  late responses to the requests for admissions.  No meaningful prejudice has been suffered

17  by the Defendants as a result of the nine-day delay in serving them. Justice would be

18  done.

19  ////

20  ////

21  ////

22  ////

23  ////

24  ////

25  ////

26  ////

27  ////

28  ////

135

## DECLARATION OF ARNOLDO CASILLAS

I, ARNOLDO CASILLAS, declare as follows:

1. I am an attorney duly licensed to practice before the present court. I am a partner with the law offices of Moreno, Becerra, Guerrero & Casillas, attorneys of record for Plaintiffs herein. I have personal knowledge of the facts contained herein and if called upon to do so could and would competently testify thereto.

2. Subsequent to serving Plaintiffs' Response to Defendants' Request for Admissions on August 26, 2003, Plaintiffs' counsel became aware that, according to Fed.R.Civ.P. 36 (a), a failure to respond to requests for admissions in a timely fashion may deem the matters contained therein admitted.

3. At the time Plaintiffs filed the original complaint on or about June 27, 2002, Plaintiffs had not determined the true names and identities of the particular INS/Border Patrol Agents that were involved in the incident. Therefore, Plaintiffs fictitiously named "Five Unknown INS/Border Patrol Agents" in the complaint among other defendants whom Plaintiffs believed the unknown agent defendants to be working for at the time of the incident, including defendants United States of America, U.S. Department of Immigration and Naturalization and United States Border Patrol.

4. Plaintiffs intended on amending the complaint to add the true names of the unknown agents involved upon learning their identities through further investigation, discovery and/or communication with counsel for Defendants.

5. Thereafter, through the disclosure of documents by Defendants, Plaintiffs learned of the true names and identities of three of the unknown agents fictitiously named in the complaint as defendants.

6. Based on such knowledge, Plaintiffs' counsel spoke with Defendants' counsel, Assistant U.S. Attorney, Nancy Masso, regarding a stipulation to amend the complaint to include the names of "newly learned" defendant agents involved in the incident.

136

7.    On January 31, 2003, I forwarded a copy of the stipulation regarding amending the complaint, the related proposed order, and a copy of the amended complaint along with a letter to Defendants' counsel Nancy Masso.

8.    In the letter, I indicated to Ms. Masso that the amended complaint now contained the names of the three Border Patrol agents whom we both agreed were present and somehow involved in the subject drowning incident. I also requested that Ms. Masso review each of the documents I had forwarded to her, including the amended complaint, for any changes that should be made. In the alternative, if no changes were necessary, and the documents met with her approval, I requested that Ms. Masso file the originals upon receiving them from my office via overnight delivery.

9.    Defendants' counsel never communicated to this office any problems with the mentioned documents or that any changes were necessary. Therefore, on or about February 13, 2003, Plaintiffs' amended complaint was filed, adding the names of defendant INS/Border Patrol agents George F. Felton III, Daniel Zaehringer and Patrick B. McDermott.

10.    The allegations of the amended complaint have since been sufficiently supported by the declarations of three percipient witnesses – Fernando Del Rio Vargas, Carmelo Abundis and Roberto Vargas Vargas – whom Plaintiffs tracked down subsequent to filing the amended complaint.

11.    The Request for Admissions at issue propounded by defendant United States of America go to the core of the allegations of Plaintiffs' complaint. Specifically, the admissions that were sought (i.e. whether the decedents were in the custody of Defendants, whether the Defendants ever unholstered and drew their weapons, and whether the Defendants prevented a rescue) are crucial to the determination of the merits of Plaintiffs' case, and constitute central facts in dispute.

12.    These Requests were not questions that Plaintiffs could readily answer since the Plaintiffs' are heirs and not percipient to the events that occurred at the time of the

- 23 -
137

1      deaths. Plaintiffs' answering these Requests nine (9) days late was not deliberate,

2      but rather resulted from excusable inadvertence on the part of Plaintiffs' counsel

3      who was still in the process of locating witnesses at the time the responses to the

4      requests came due.

5  13.  Defendants were not possibly prejudiced by Plaintiffs' late responses to the

6      requests for admissions at issue. Defendants knew of Plaintiffs' allegations that

7      the conduct of the named defendant agents defendants involved, in assuming

8      custody of the decedents by pointing their guns at them and then cutting off the

9      escape for such misdemeanor aliens, did not justify their failure to allow rescue

10      attempts. That was and has always been the essence of the complaint.

11  14.  The identified defendant agents were actually at the scene at the time the subject

12      incident occurred. Thus, unlike Plaintiffs, Defendants have always been better

13      situated to determine the exact date and location of the deaths at issue, as well as

14      the identities of any percipient witnesses, or of any evidence, that may exist.

15      Presently, there is no new evidence that Defendants must now somehow attempt to

16      refute.

17  15.  Tracking down percipient witnesses has been a difficult task based on the facts and

18      circumstances of this case. By no means was the untimely Response deliberate or

19      meant to somehow prejudice Defendants, or to communicate an unwillingness on

20      Plaintiffs' part to comply with discovery or cooperate with Defendants in this case.

21  16.  The Recommendation and Report was served on my office mail and was not

22      received by this office by fax. Accordingly, Plaintiffs have until August 7, 2004,

23      and your declarant confirmed the deadline with the Clerk's office prior to July 30,

24      2004.

25  17.  I declare under penalty of perjury that the foregoing is true and correct. Executed

26      on August 5, 2004, in Montebello, California.

27

28      ARNOLDO CASILLAS

- 24 -

1                REQUEST FOR HEARING/ORAL ARGUMENT:

2        Plaintiffs respectfully request that the present court set this matter for hearing and

3  oral argument with respect to the matters raised herein.

4

5                       Respectfully submitted,

6                       MORENO, BECERRA, GUERRERO & CASILLAS
                           A Professional Law Corporation

7

8  DATED: August 5, 2004   By:

9                       ARNOLDO CASILLAS
                       Attorneys for Plaintiffs

10                   Estate of Jose Vargas, by and through Maria H.
                   Covarrubias; Administrator and Successor in

11                   interest; Ricardo Vargas, a minor, by and
                   through his guardian Maria H. Covarrubias;

12                   Maria H. Covarrubias; Jose G. Vargas
                   Mendoza; Angelina Valencia Morales; Estate of

13                   Guillermo Acosta Zamora, by and through
                   Maria Teresa Alvarado Mendez, Administrator

14                   and Successor in Interest; Maria Teresa
                   Alvarado Mendez; Victor H. Acosta Alvarado;

15                   Ronald Acosta Alvarado; and, Luis Alberto
                   Acosta Alvarado

16

17  CERTIFICATE OF SERVICE
     I hereby certify that a copy of the true and foregoing copy of Plaintiffs' Objections to the

18  Magistrate Judge's Report and Recommendation, and request to allow late responses;
     declaration of Arnoldo Casillas was mailed on August 5, 2004 via overnight delivery

19  Federal Express to defendants' counsel, as follows:

20  Ms. Nancy Masso, AUSA
     United States Attorney's Office

21  Southern District of Texas, Brownsville Division
     600 E. Harrison St., Suite #201

22  Brownsville, TX 78520.

23  Said document was also mailed to her via US Mail on the same date.

24  DATED: August 5, 2004   By:
                       ARNOLDO CASILLAS

25

26

27

28

139

1

CERTIFICATE OF SERVICE

2  I hereby certify that a copy of the true and foregoing copy of Plaintiffs' Objections to the
Magistrate Judge's Report and Recommendation, and request to allow late responses;

3  declaration of Arnoldo Casillas was mailed on August 5, 2004 via overnight delivery
Federal Express to defendants' counsel, as follows:

4
Ms. Nancy Masso, AUSA

5  United States Attorney's Office
Southern District of Texas, Brownsville Division

6  600 E. Harrison St., Suite #201
Brownsville, TX 78520.

7
Said document was also mailed to her via US Mail on the same date.

8
DATED: August 5, 2004    By:

9                                       ARNOLDO CASILLAS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28