IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ESTATE OF JOSE VARGAS, by and through MARIA H. COVARRUBIAS, *etc.* Plaintiffs, | * * * * | |
| v. | * * | CIVIL ACTION No. B-02-132 |
| GEORGE F. FELTON, III., DANIEL ZAEHRINGER, PATRICK B. McDERMOTT, ETC. | * * * * | |
| Defendants. | * | |

### DEFENDANTS' SUPPLEMENTAL RESPONSE
### IN OPPOSITION TO PLAINTIFFS' MOTION TO WITHDRAW ADMISSIONS

TO THE HONORABLE JUDGE OF SAID COURT:

    Defendants, George F. Felton, III., Daniel Zaehringer, and Patrick B. McDermott, continue to oppose the Plaintiffs' Motion to Withdraw or Amend Admissions ("Plaintiffs' Motion"). Plaintiffs' Motion filed more than four months after the expiration of the "non-dispositive motions" deadline set in this Court's February 28, 2003 Scheduling Order, should be denied.

    As a supplement to the arguments provided in Defendants' initial opposition response to Plaintiffs' Motion, Defendants would urge this Court to consider the following:

1. Control of discovery lies within the sound discretion of the Court. *Dukes v. South Carolina Insurance Company*, 770 F.2d 545, 549 (5th Cir. 1985). The scheduling of discovery deadlines as well as other procedural elements related to litigation in the federal courts are, in great part, addressed at Rule 16 of the Federal Rules of Civil Procedure. As noted by the Fifth Circuit:

> Rule 16(b) provides that a scheduling order 'shall not be modified except upon good cause and by leave of the district judge.' The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the

   party needing the extension.'

*S&W Enterprises, L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 535 (5th Cir. 2003); *quoting* FRCP, Rule 16(b) and 6A *Charles Alan Wright et al.*, *Federal Practice and Procedure* §1522.1 (2d ed. 1990).

2. In *Southwest Enterprises*, the Fifth Circuit held that when a party sought to amend its complaint, *after the expiration of the scheduling order,* Rule 16(b) of the FRCP applied; thus requiring the movant to demonstrate "good cause" as to why the scheduling order should be modified. The purpose for this was to give the district courts the discretion needed "'...to preserve the integrity and purpose of the pre-trial order.'" *S&W Enterprises, L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 535 (5th Cir. 2003) *quoting Geiserman v. Macdonald*, 893 F.2d 787, 790 (5th Cir. 1990) and *Hodges v. United States*, 597 F. 2d 1014, 1018 (5th Cir. 1979). Factors a court could consider in making this decision include not just whether the non-moving party would be prejudiced, or that the proposed "amendment" was important, or that a continuance would cure the problem; but the court could also consider the movant's explanation for his failure to file a timely motion. *Id.*

3. In the instant case, this Court issued a scheduling order setting deadlines for, *inter alia*, discovery, dispositive motions and non-dispositive motions. (Docket No. 30) The discovery phase of this case expired on January 31, 2004. The dispositive motion deadline expired on March 12, 2004, and the non-dispositive motion deadline expired on March 29, 2004. To date, Plaintiffs have not sought an extension of any of these deadlines.

4. Plaintiffs have now filed a motion that –for all intensive purposes–seeks to deprive the Defendants of a core defense to the Fifth Amendment claims alleged against them. Such a motion may well be likened to a motion to amend pleadings like that addressed by the Fifth Circuit in *Southwest Enterprises. S&W Enterprises, L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533 (5th Cir. 2003). As such, Plaintiffs' motion should be considered not just from the perspective of the two part test set out in Rule 36(b) of the FRCP, but also from the perspective that Plaintiffs must show "good cause" for their complete and utter failure to

        comport with virtually every deadline established by this Court.

5. In *Southwest Enterprises*, the Fifth Circuit noted that one purpose of the pretrial order was to "expedite pretrial procedure." *Id*. In the case at bar, Plaintiffs' filed their motion, without seeking leave of court, well beyond the expiration of <u>all</u> the Pretrial Deadlines established in this case.

6. On August 31, 2004, during the course of the hearing on Plaintiffs' motion, Plaintiffs' counsel advised this Court that he did not immediately file for relief under Rule 36(b) of the FRCP due to his confusion between the California procedural process and the federal procedural process regarding the withdrawal of admissions.

7. When asked why Plaintiffs did not bring their motion when they first learned of Defendants' reliance upon the admissions[1], Plaintiffs' counsel again pleaded ignorance in his understanding of the case law and his obligations under the Federal Rules of Civil Procedure.

8. This failure on counsel's part should not be a reasonable excuse showing excusable neglect or "good cause". See *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ("[I]gnorance of the rules [and] mistakes construing the rules do not usually constitute 'excusable neglect'").

9. All three of the Plaintiffs' attorneys herein submitted "Pro Hac Vice" motions to this Court. (See Docket Nos. 3, 4, and 5). In order to obtain permission from this Court to appear in this case, Plaintiffs' counsel indicated that they were familiar with the rules of this Court and the Federal Rules of Civil Procedure when they advised this Court that each of them had been admitted to practice in the United States District Court for the Central District of California. Yet, now Plaintiffs' counsel suggest that--because of their ignorance of the Federal Rules of Civil Procedure--they should be excused for their flagrant disregard of the scheduling deadlines in this case.

---

[1] Defendants' filed summary judgment motions indicating their reliance on the Plaintiffs' admissions on February 5, 2004, nearly two months before the expiration of this Court's non-dispositive motions deadline. The briefs in support of the motions also noted that Plaintiffs needed to file a motion for relief under Rule 36(b) if they wanted to withdraw or amend their admissions.

10. While the Plaintiffs have complied with none of the deadlines of this Court, Defendants herein have complied with all the deadlines established by this Court. Yet, it will be the Plaintiffs that reap the benefits from a protracted litigation should they prevail on their Motion to withdraw their deemed admissions.

11. Since August of 2003, the Defendants herein have had no need to expend resources and conduct discovery. Defendants took no action to secure documents or other forms of evidence that may show or indicate that other–perhaps similar drowning deaths–occurred at or around June 30, 2000 to support the possible defense that Plaintiffs, Defendants, or witnesses may be confused about which incident is truly at issue.[2] Files that may have been routinely maintained by various governmental agencies (i.e. the former Immigration and Naturalization Service, local law enforcement, foreign governments) have likely been purged as a regular part of doing business or lost due to the passage of time. Access to potential witnesses to this incident or other similar incidents cannot be located. Witnesses that are citizens of Mexico are located well beyond the subpoena range of this Court[3].

12. Admittedly, the Court may view such problems as speculative in nature. Unfortunately, however, to prove more than speculation on these issues Defendants would have to place themselves in the very position they sought to avoid in securing these admissions in the first place. In order to give this Court concrete proof that witnesses or documents cannot be located as a result of

---

[2] Attached hereto is a copy of an article titled "Recent Drownings Prompt BP to Step Up Safety Efforts" from *The Brownsville Herald*. This article was posted on June 28, 2000. It discusses "recent televised drowning deaths of two Mexican men witnessed by Border Patrol agents..." These deaths occurred sometime in June 2000 (as Plaintiffs indicate in the Amended Complaint) and they occurred in Brownsville (as Plaintiffs indicated in their Amended Complaint). This incident received local publicity because it was recorded by a news crew and as such may not be the incident that took the lives of Messrs. Vargas and Zamora. However, the similarities between the two incidents cannot be ignored. This article is attached hereto as Attachment 2.

[3] The non Vargas family related witnesses all attempted to enter this country illegally. Experience tells us that such individuals usually continue in their attempt to cross into the country illegally. It therefore follows, that a search will need to take place not just on foreign soil, but on domestic soil as well. Such a search will not only be costly for the defendants in this case, but it will likely cause an even longer delay of taking this case to trial.

Plaintiffs failure to act more promptly, Defendants would have to undertake a search for these persons and documents–a search that will surely be costly and lengthy.

13. The delay resulting from Plaintiffs haphazard prosecution of their lawsuit should not necessarily be measured from the time that the Plaintiffs failed to answer the admissions. The Plaintiffs waited until just three days before the limitations period was to run on this case to file their lawsuit[4]. By this time, two years had passed.

14. Plaintiffs did not serve the individually named defendants with their Amended Complaint until April of 2003–thirty four months after the incident occurred and some ten months after the lapse of the limitations period. The individually named defendants in this case did not–and could not be presumed to have received notice of this case–until the United States, at a minimum was served. The United States was not served with this Complaint until October of 2002–over three months past the expiration of the limitations period. Consequently, it was nearly three years after this incident happened that the Defendants first learned of this lawsuit.

15. It is worthy to note that the Fifth Circuit cases that discuss the application of a limitations (and laches) defense state that "the 'requirement of diligent inquiry imposes an affirmative duty on the potential plaintiff to proceed with a reasonable investigation in response to an adverse event.'" *Ramming v. United States*, 281 F.3d 158, 163 *quoting Pacheco v. Rice*, 966 F.2d 904, 907 (5th Cir. 1992).

---

[4]Congress has not provided a specific statute of limitations for civil rights actions; however, in Wilson v. Garcia, 471 U.S. 261, 279 (1985), the Supreme Court held that §1983 action resemble "general personal injury actions". Consequently, the timeliness of a §1983 suit must be determined in accordance with the relevant state statute of limitations period governing personal injury actions.

In Texas, the general statute of limitations governing personal injury actions provides that a lawsuit must be brought within two years after the day the cause of action accrued. Tex. Civ. Prac. & Rem. Code §16.003(a).

In the case at bar, plaintiffs assert that the incident (and Fifth Amendment violation) occurred on June 30, 2000. In addressing this issue, the Fifth Circuit, as well as other circuit courts, have uniformly applied Wilson to Bivens suits. See McGuire vs. Turnbo, 1998 WL 113490 (5th Cir. (Tex.)), March 31, 1998, citing to Spina v. Aaron, 821 F.2d 1126, 1128-29 (5th Cir. 1987). Unfortunately, however, because of the "Relation Back Doctrine" outlined at Rule 15(c)(3), the Defendants are unable to seek a dismissal on limitations grounds.

16. In the case at bar, it appears that the Plaintiffs did little, if any, inquiry into the facts of this case before they filed suit. First, Plaintiffs were confused about the date. Then, Plaintiffs were confused about the location of the incident. Prior to filing this lawsuit, Plaintiffs never tried to determine the correct date, time, or location of the incident. Moreover, Plaintiffs made no effort to discover the names of the agents alleged to have violated the decedents' constitutional rights until after they filed their lawsuit.[5]

17. As noted by the Fifth Circuit in *Veazey v. Young's Yacht Sale and Service*, 644 F.2d 475, 477-478 (5th Cir. 1981):

    > [d]elay alone can infuse an adverse element into the proper flow of litigation: evidence deteriorates or disappears, memories fade, and witnesses die or move away. If the delay is unjustified, the court can and must act to redress the balance."

    This is the situation in the case at bar. Plaintiffs failure to make any type of investigation prior to filing this lawsuit and continued failure to comply with the rules of this Court serve only to prejudice the interests and defenses of the Defendants. Plaintiffs had, and continue to have, their witnesses–all relatives of the decedent Jose Vargas–available. These witnesses provided affidavits that were not only inconsistent within themselves, but also with one another. Any non-party (and unrelated) witnesses that the Defendants may have been able to call to testify in their defense are now likely to have forgotten key facts[6].

18. In addition, over the past four years the Defendants' employing agency–the United States Border Patrol has gone under significant changes. In March of 2003, the Border Patrol was transferred from Department of Justice oversight to Department of Homeland Security oversight. In the months that followed, significant changes in management, record keeping, and record keeping

---

[5] There are means of obtaining information from government files without litigation (i.e. Freedom of Information Act, 5 U.S.C. 552 and 552a).

[6] Attached is an excerpt from *Witness For the Defense: The Accused, the Eyewitness, and the Expert Who Puts Memory on Trial* by Dr. Elizabeth Loftus and Katherine Ketcham, St. Martin's Press, 1991, wherein it is mentioned that "[m]emories don't just fade, as the old saying would have us believe; they also grow." (See page 2 of Attachment 1).

responsibilities occurred. Consequently, it is difficult to determine what documents may possibly have been lost or destroyed or purged as a of this transfer.

## Conclusion

Plaintiffs assert that the delay of prosecuting this case would not be prejudicial to the Defendants in this case. This is an easy assertion for the Plaintiffs to make; after all, their case and access to witnesses hasn't been compromised in the least.

At the outset of this case, Defendants began to prepare for their defense. Defendants responded to Plaintiffs' written discovery demands and complied with all of the scheduling order deadlines issued by this Court. When Plaintiffs failed to answer Defendants' requests for admissions and other discovery herein, Defendants felt no need to locate additional information regarding other drowning incidents that occurred in June and July of 2000 near Brownsville, Texas. No search was made to locate potential witnesses to this or other incidents that occurred in June and July of 2000. Not all drowning deaths are necessarily the subject of news media reports or recorded by the governments on either side of the river. Documentary evidence, other than that received by the undersigned at the initial stages of this case, was not sought out or otherwise maintained by the Defendants.

Plaintiffs must be made to accept responsibility for their dilatory conduct in this case. The delay in bringing this lawsuit to a prompt and fair resolution lies squarely at the feet of the Plaintiffs. Plaintiffs could have easily gotten this case back on track if they had complied with the scheduling order issued in this case. Plaintiffs complete disregard for the orders issued from this Court and the Federal Rules of Civil Procedure indicate a thoughtlessness or unwillingness that prevents the Defendants from being able adequately prepare their defense and put this case behind them. Plaintiffs should not be protected from the consequences of their lack of action at the expense of the Defendants herein.

Respectfully submitted,
MICHAEL T. SHELBY
United States Attorney

/s/ Nancy L. Masso
NANCY L. MASSO
Assistant United States Attorney
600 E. Harrison St., No. 201
Brownsville, Texas 78520
Tel: (956) 548-2554  Fax: (956) 548-2549
State Bar No. 00800490
Federal I.D. No. 10263

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the true and foregoing copy of DEFENDANTS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO WITHDRAW OR AMEND ADMISSIONS was mailed, via certified mail, return receipt requested, on September __10__, 2004, to Plaintiffs' attorney, Gregory W. Moreno and Arnoldo Casillas at MORENO, BECERRA, GUERRERO & CASILLAS, 3500 West Beverly Blvd., Montebello, CA 90640.

/s/Nancy L. Masso
NANCY L. MASSO
Assistant United States Attorney